TRANS WORLD AIRLINES, INC., a Delaware corporation, Defendant Below, Appellant, v. STATE OF DELAWARE, on the relation of Louis B. Porterie, Plaintiff Below, Appellee.

*(July* 10, 1962.)

SOUTHERLAND, Chief Justice, and WOLCOTT, Justice, and DUFFY, Judge, sitting.

*Aaron Finger* (of Richards, Layton and Finger) for appellant. Cahill, Gordon, Reindel and Ohl, of New York City, of counsel.

*James M. Tunnell, Jr.,* and *Andrew B. Kirkpatrick, Jr.,* (of Morris, Nichols, Arsht and Tunnell) for appellee.

Supreme Court of the State of Delaware, No. 26, 1962.

SOUTHERLAND, C. J.:

In the court below relator Porterie petitioned for a writ of mandamus to permit inspection of the stock ledger of Trans World Airlines, Inc., a Delaware corporation (TWA).

The court granted the writ, subject to conditions. TWA appeals. The facts are as follows:

TWA is one of the largest airlines of the country. Approximately 78% of its common stock is owned beneficially by Hughes Tool Company, which is controlled and largely owned by Howard Hughes.

Some two years ago TWA was in need of major financing. Arrangements were made for the borrowing of at least $165,000,000 from a group of New York banks and insurance companies. The approval of the Civil Aeronautics Board was obtained. As a condition of the loan Hughes Tool Company was required to deposit all its stock in a voting trust. All this was completed, we gather, in late 1960.

Sometime last year TWA, under new management, filed in the U. S. District Court in New York an action seeking to recover $115,000,000 from Hughes Tool Company and Howard Hughes as damages for alleged injuries inflicted by them upon TWA. The defendants answered, and also counterclaimed (or charged) that claims on behalf of TWA and Hughes Tool Company existed against other persons (apparently the lending institutions). Defendants also asserted the invalidity of the voting trust and prayed for its termination

On January 18, 1962, Porterie, the relator, bought 100 shares of TWA stock. On February 2, 1962, he made written demand on TWA's transfer agent for inspection of the stock ledger, and appointed an agent to make the inspection. A partial inspection was allowed, but later further inspection was denied. On March 8 this suit was filed.

TWA's answer sets up, in effect, two defenses.

First, it is said that Porterie in seeking inspection is acting solely on behalf of and in the interest of Hughes Tool Company and Howard Hughes (herein "Hughes"), who are

not record stockholders of TWA and not entitled to inspection.

Second, it is said that Hughes and Porterie are seeking inspection for purposes inimical to the interests of TWA and its stockholders, that is, they are seeking to obtain minority stockholder support for a corporate policy designed to defeat TWA's action against them.

■■ 1. TWA's first contention—that Porterie is acting for Hughes—is clearly established by the record. It is unnecessary to review the evidence. Hughes' agents inspired the demand and made the partial inspection, and Hughes is financing the litigation. This fact alone, however, does not defeat Porterie's right of inspection. That right depends on record ownership. *State ex rel. Healy v. Superior Oil Corporation*, 40 *Del.* 460, 13 *A.* 2d 453.

■ 2. TWA's second contention is that the purpose of the inspection is improper and inimical to the corporate interest, and hence inspection should be denied. TWA invokes the decision of our Supreme Court in *State ex rel. Theile v. Cities Service Company*, 31 *Del.* 514, 115 *A.* 773, 22 *A. L. R.* 8. If the corporation can show that inspection is sought "for an improper or unlawful purpose", the writ will be refused.

TWA contends that Porterie and Hughes want the list for an improper purpose. That purpose, as above noted, is said to be the thwarting of the suit against Hughes. TWA has shown that at Hughes' request Porterie agreed to sponsor a resolution to be included in the proxy statement to stockholders preceding the annual meeting of April 26. The resolution recommends that the TWA board direct the management to assist counsel for Hughes Tool Company in prosecuting any claim of TWA against the lending institutions.

TWA says that if the management did as requested its large claim against Hughes would have to be abandoned. Such a result, it says, would be harmful to the corporation and

would serve only the selfish interest of Hughes, who has placed his interest in the Hughes Tool Company above his large interest in TWA.

It is plain to us that this argument is based on the tacit assumption that the litigation against Hughes is meritorious and for the benefit of TWA. Without that assumption TWA could not claim injury from the abandonment of the litigation.

■ Now, counsel agree (as they must) that we cannot pass on the merits of that litigation. Hence we cannot make the assumption upon which TWA's argument depends. The position is this: The present management, finding that injury has been inflicted upon TWA, says that Hughes is the wrongdoer. Hughes counters with the charge that the lending institutions are the wrongdoers. The matter is one of corporate concern, and any stockholder is entitled to take which side he prefers and to seek support from fellow stockholders. For this purpose he is entitled to inspection of the stock ledger. It is a purpose germane to his interest as a stockholder. He cannot be denied inspection because the management insists he is on the wrong side. This result must have been reached even if Howard Hughes had bought the 100 shares in his own name and filed this suit, instead of resorting to what TWA counsel, not without justification, call "cloak-and-dagger" methods. For cases supporting generally this conclusion see *Insuranshares Corporation v. Kirchner*, 40 *Del.* 105, 5 *A.* 2d 519; *State ex rel. Healy v. Superior Oil Corporation, supra; and State ex rel. Foster v. Standard Oil Company*, 41 *Del.* 172, 18 *A.* 2d 235.

■ TWA makes another contention—unclean hands. This is based on Porterie's failure to disclose to the corporation his connection with Hughes, and upon the fact that his agent who visited the transfer agent gave a false name. All this seems to us to be immaterial to the issue.

█ Finally, TWA bases an argument upon the order of the court below. The inspection granted was a qualified one. It provides:

The Relator shall not make the list or any part thereof or any information obtained therefrom available, directly or indirectly, to Howard Hughes or Hughes Tool Company, their or either of their attorneys, agents or representatives.

TWA argues that the inclusion of this qualification indicates that the trial judge found that any use of a stockholders' list by Hughes or in furtherance of Hughes' purposes would be hostile to the corporate interests; and, since Porterie is clearly Hughes' agent, the court should not have allowed any inspection whatever.

It is by no means clear that the trial judge made such a finding. He filed no opinion. He may have excluded Hughes from the use of the list because Hughes was not a record stockholder.

However this may be, the most that TWA can make out of the qualification in the order is that it is inconsistent with the right of inspection. But it would be for Porterie and not for TWA to complain of this.

We think that the court was right in granting inspection. In so ruling, however, we disclaim any implied approval of the insertion in the order of the quoted qualification. If a stockholder is entitled to inspection, the propriety or wisdom of attaching to the inspection conditions of this sort is certainly very doubtful. Judgment affirmed.