Karen SHAW and Forrest Foster, Plaintiffs Below, Appellants,

v.

AGRI–MARK, INC., Defendant Below, Appellee.

No. 83, 1995.

Supreme Court of Delaware.

Submitted: July 6, 1995.
Decided: Aug. 2, 1995.

Noel E. Primos, Schmittinger and Rodriguez, Dover, and Robert A. Gensburg (argued), St. Johnsbury, VT, for appellants.

Jesse A. Finkelstein (argued), and Lisa A. Schmidt, Richards, Layton & Finger, Wilmington, and Robert B. Hemley and Dennis R. Pearson, Gravel and Shea, Burlington, VT, for appellee.

Before WALSH, HOLLAND, and BERGER, JJ.

WALSH, Justice:

This matter is before the Court as the result of the certification of two questions of

law pursuant to Article IV, Section 11(9) of the Delaware Constitution and Delaware Supreme Court Rule 41. The questions of law have been certified by the United States Court of Appeals for the Second Circuit and were accepted by this Court by order dated March 10, 1995. The certified questions are the following:

(1) Did persons who supplied equity capital to a cooperative stock corporation and directly elected its directors, but who were not stockholders of record, have a right under Delaware common law to inspect the corporation's books and records?

(2) If the answer to question (1) is yes, did that right survive the enactment of 8 Del.C. § 220?

We conclude that a party who supplies equity to a stock corporation, but who is not a stockholder of record, does not have a right to inspect the corporation's book and records under Delaware common law. We thus answer the first certified question in the negative.[1]

I

The following undisputed facts were set forth in the Certificate of Questions of Law ("Certificate") submitted by the Second Circuit to this Court.[2] Appellee Agri–Mark, Inc. ("Agri–Mark") is a cooperative stock corporation organized under the Delaware General Corporation Law, 8 Del. C. § 101 et. seq., with its principal place of business in Methuen, Massachusetts. Its business consists of processing, handling and marketing milk and other dairy products of its "producer members," farmers in the New England states and New York. Appellants are Vermont dairy farmers who have signed a Member Marketing Agreement ("Marketing Agreement") with Agri–Mark. The Marketing Agreement is a contract by which the "member" of Agri–Mark agrees to sell all of his or her milk or milk products to Agri–Mark, and, in exchange, Agri–Mark agrees to market such dairy products to the public. Agri–Mark's equity base is comprised entirely of member contributions to the corporation and retained earnings from the proceeds of Agri–Mark's milk marketing operations.

Agri–Mark's corporate governing structure is largely determined by its bylaws, which are incorporated by reference into each Marketing Agreement. The cooperative is divided into geographical sections and regions. Each section, consisting of at least twenty members, elects a number of delegates to the region equal to the number of members in the section divided by twenty. Each region is a geographical area containing between 100 and 275 members. There must be at least fifteen regions in the cooperative, each of which must contain at least two sections. Agri–Mark's bylaws provide that every member is entitled to one vote at regional and sectional meeting regardless of the size or number of farms the member owns. The Board of Directors of Agri–Mark is selected at the cooperative's regional meetings with members from each region electing one director. Members from each region also elect voting representatives to represent the region at cooperative meetings.

The stock of Agri–Mark is held by those who are elected to its Board of Directors. Each director is issued one share of Agri–Mark stock in exchange for one dollar. The directors constitute the only Agri–Mark stockholders of record. At the expiration of each director's term, he or she must sell his or her share back to Agri–Mark for one dollar. Only directors are permitted to vote at annual or special meetings of the stockholders. The bylaws provide that a special meeting of the cooperative must be called by the chairman or secretary of the corporation

---

1. In our view, the first and second certified questions are interrelated. Therefore, for purposes of this decision, we combine the certified questions into one analysis.

2. For purposes of the certification proceeding, Karen Shaw and Forrest Foster were designated as the appellants, and Agri–Mark was designated as the appellee in this Court. We note that the parties have made factual assertions in addition to the those included in the Certificate. Because the certification process requires that the "facts material to the issue" not be in dispute, Supr. Ct.R. 41(b), and because we have no basis for independently verifying the accuracy of the factual representations, we make no reference to factual assertions other than those included in the Certificate. See also Farahpour v. DCX, Inc., Del.Supr., 635 A.2d 894, 897 (1994).

if requested by ten percent of its members. At this meeting, the regional representatives vote. With respect to any matter on which Delaware law guarantees stockholders a right to vote, the directors as a group are required to vote in accordance with the instruction of the regional voting representatives as a group.

Although the members of Agri–Mark supply the corporation with its equity and directly elect its directors, they are not stockholders of record, since the by-laws limit that status to directors. Appellants are not presently, nor have they ever been, directors of Agri–Mark.

Appellants brought an action in Superior Court in the State of Vermont seeking an order to compel Agri–Mark to allow them to inspect its books and records. Specifically, appellants sought to inspect, *inter alia*, Agri–Mark's membership list, as well as salary information concerning the five highest-paid executives of Agri–Mark. Agri–Mark removed the case to the United States District Court for the District of Vermont based upon diversity of citizenship. *See* 28 U.S.C. § 1332. The District Court entered judgment in favor of appellants on the ground that, although not stockholders of record, appellants were among the real equity owners of Agri–Mark and, having demonstrated a "proper purpose" in seeking to inspect the membership list and executive compensation of Agri–Mark, they should be permitted the right of inspection as members of the cooperative under Delaware common law.

Agri–Mark then appealed to the United States Court of Appeals for the Second Circuit.[3] The District Court stayed its judgment pending the appeal, noting that "the central issue is a purely legal question." After briefing by the parties and oral argument, the Second Circuit certified two questions of law to this Court. This is the decision of the Court on the certified questions.

## II

■ It is well established that, as a matter of common law, a stockholder of a Delaware corporation possessed a qualified right to inspect or examine the stock ledger, as well as the books and records of the corporation. *Rainbow Nav., Inc. v. Pan Ocean Nav.*, Del.Supr., 535 A.2d 1357, 1359 (1987); *State ex rel. Healy v. Superior Oil Corp.*, Del.Super., 13 A.2d 453, 454 (1940); *State ex rel. Cochran v. Penn–Beaver Oil Co.*, Del.Supr., 143 A. 257 (1926). The stockholder's common law right of inspection may not be divested except by statutory enactment. *Rainbow Nav.*, 535 A.2d at 1359; *BBC Acquisition Corp. v. Durr–Fillauer Medical, Inc.*, Del.Ch., 623 A.2d 85, 90 (1992). At common law, the right of inspection was enforceable only through the issuance of a writ of mandamus from the Superior Court compelling the corporation to permit inspection by the stockholder. *State ex rel. Richardson v. Swift*, Del.Super., 30 A. 781, 781–82 (1885) ("*Swift I*"), *aff'd*, *Swift v. State ex rel Richardson*, Del.Ct.Err. & App., 6 A. 856 (1886) ("*Swift II*").

■ The writ of mandamus was an extraordinary remedy, not issuable as a matter of right. *State ex rel. Thiele v. Cities Service Co.*, Del.Supr., 115 A. 773, 774 (1922). Its issuance was within the sound discretion of the court, depending upon the particular circumstances of each case. *Id.; State ex rel. Brumley v. Jessup & Moore Paper Co.*, Del. Supr., 77 A. 16, 22–23 (1910); *State ex rel. Miller v. Loft, Inc.*, Del.Super., 156 A. 170, 171–72 (1931). For a writ of mandamus to issue, "[t]he right which it is sought to protect must [ ] be clearly established." *Swift II*, 6 A. at 861. The stockholder was therefore required to make specific factual averments in the petition to show clearly that he or she was entitled to the relief (inspection) sought. *Swift I*, 30 A. at 785. In other words, the stockholder was required to demonstrate to the court "those special circumstances which would justify it in interposing its mandatory process in his behalf." *Thiele*, 115 A. at 775.

■ As noted, the common law right of inspection was not absolute. In order to

---

**3.** Notably, Agri–Mark did not appeal the District Court's holding that appellants demonstrated a "proper purpose" in seeking inspection of its books and records.

enforce inspection rights by writ of mandamus, the stockholder demanding inspection had to show that the inspection was for "proper purposes." *See Brumley*, 77 A. at 20 (noting that the common law right of a stockholder "to inspect the books of the corporation at a proper time, for proper purpose ... is a principle of law long ago recognized in this state."). Although hardly self-defining, a proper purpose was viewed under the common law as a purpose relating to the *interest* that the stockholder sought to protect by seeking inspection.

> It is well settled that [the common law right of inspection] should not be granted for speculative purposes or to gratify mere idle curiosity, and that the purpose of the petitioner in asking for the writ must be a proper and reasonable one, and the interest which he seeks to protect must be such as to warrant and justify the remedy he invokes.

*State ex rel. De Julvecourt v. Pan–American Co.*, Del.Super., 61 A. 398, 400 (1904), *aff'd*, Del.Supr., 63 A. 1118 (1906). In other words, the propriety of a demanding stockholder's purpose was measured by whether it related to the stockholder's interest *qua* stockholder, that is, a proper purpose in seeking inspection was viewed as a purpose germane to the petitioner's interest or status as a stockholder.

> At common law, the right to inspect corporate books was a qualified right, and allowable only when the stockholder was actuated by motives that were lawful and proper and by a purpose to subserve [sic] his interests as a holder of the corporate stock.

*Thiele*, 115 A. at 775.

In short, a stockholder's right to inspection is status-related. *See Swift I*, 30 A. at 783 ("The right of [a stockholder] to the inspection and copies which he demands [is] a right founded on the common law of the state by virtue of his being a stockholder in th[e] corporation...."). In this regard, inspection rights have been viewed as an incident to the stockholder's ownership of corporate property. 5A William Meade Fletcher, *Fletcher Cyclopedia on the Law of Private Corporations*, § 2230 at 336 (perm. ed. rev. vol. 1995). As an equitable owner of the corporation's assets, a stockholder possessed a right to reasonable information concerning the conduct of corporate management, as well as the condition of the corporation's business and affairs. *Miller*, 156 A. at 172; *State ex rel. Waldman v. Miller–Wohl Co., Inc.*, Del.Super., 28 A.2d 148, 153 (1942); *Penn–Beaver Oil Co.*, 143 A. at 260; *Brumley*, 77 A. at 21. As a matter of self-protection, the stockholder was entitled to know how his agents were conducting the affairs of the corporation of which he or she was a part owner. *Brumley*, 77 A. at 21.

In addition to the common law right of inspection, the right has been codified in some form in Delaware since the turn of the century. *See* § 29 of the General Corporation Law of 1901, 22 *Del.Laws* c. 167; *Bay State Gas Co. v. State ex rel. Content*, Del. Supr., 56 A. 1114 (1904). The original statutory enactment eliminated the formalistic pleading requirements of the extraordinary writ of mandamus by giving the stockholder a "positive right" to inspection of corporate books and records. *See Thiele*, 115 A. at 776. Under the statute, the stockholder need only allege in the petition for a writ of mandamus: (i) that the defendant company is a corporation; (ii) that the petitioner is a stockholder of record therein; (iii) that there was a proper demand and refusal of inspection; and (iv) that the corporation failed to comply with a duty imposed by law sought to be enforced by the proceeding. *Id.* at 775; *Bay State Gas*, 56 A. at 1119; *see also Trans World Airlines, Inc. v. Porterie*, Del.Supr., 183 A.2d 174, 175 (1962). Nevertheless, if the corporation could show that the petitioner sought inspection for an improper purpose, the court had the discretion to deny the stockholder access to the corporation's books and records. *Thiele*, 115 at 776.[4]

---

4. The court elaborated on the importance of stockholder status in the following language:

> We are of the opinion that the right given to the stockholder by the statute to inspect the company's books is given to him as stockholder and is to be exercised by him qua such. If it appears that he seeks to exercise the right for some purpose that is in no wise connected with his interest as stockholder, but is entirely foreign to such interest, the court which is

The stockholder's right to inspect the stock ledger is currently codified at 8 *Del.C.* § 220. *Compaq Computer Corp. v. Horton*, Del. Supr., 631 A.2d 1, 3 (1993). Section 220 provides in pertinent part:

(a) As used in this section, "stockholder" means a stockholder of record.

(b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder....

(c) ... The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought....

8 *Del.C.* § 220.

With its enactment of Section 220 in 1967, the General Assembly sought to replace the formalized and burdensome mandamus procedure in the Superior Court with a summary procedure in the Court of Chancery by which a stockholder who has demonstrated a purpose reasonably related to his or her interest as such may gain swift access to the corporate books and records. *See, e.g., Schnell v. Chris–Craft Indus., Inc.*, Del.Ch., 283 A.2d 852 (1971). Like its predecessor, Section 220 limits the right to inspect stockholder lists or other corporate books and records to "stockholders of record." In fact, "establishing oneself as a stockholder of record is a mandatory condition precedent to the right to make a demand for inspection

under 8 *Del.C.* § 220." *Rainbow Nav.*, 535 A.2d at 1360. In this regard, the corporation may look to its stock ledger as the sole evidence in identifying those shareholders of record who are entitled to inspection. *See* 8 *Del.C.* § 219.[5]

It is obvious that the only persons who are integrated with a corporation as stockholders are those persons who are stockholders of record on the stock books of the corporation. To hold otherwise would lead to corporate chaos.

*Healy*, 13 A.2d at 455 (quoting *Cheatham v. Wheeling & L.E.R. Co.*, D.C.App., 37 F.2d 593, 596 (1930)).

In this case, appellants concede that they are not entitled to inspection under Section 220 because they are not presently, nor have they ever been, stockholders of record. Nevertheless, appellants contend that Section 220 supplements rather than supplants the common law right to inspect corporate books and records. *See Rainbow Nav.*, 535 A.2d at 1359 ("In addition to the common law right of inspection, the unique nature of the right to examine the stock ledger has been recognized by its codification in 8 *Del.C.* § 220."). It is argued that the common law right of inspection is more expansive than its statutory counterpart and includes "members" of cooperative corporations. In this regard, appellants note that the distribution of stock certificates is a relatively recent development in corporate law, *see* 14 C.J. *Corporations* § 514 at 391 (1919), and that courts have viewed "members" and "stockholders" of a corporation synonymously in the past. *See State ex rel. Boldt v. St. Cloud Milk Producers' Ass'n*, Minn.Supr., 200 Minn. 1, 273 N.W. 603 (1937). Appellants argue that they possess the traditional indicia of "stockholders,"

asked to issue mandamus upon the corporation to compel it to aid him pursuing such purpose, not only has the right under the statute to deny him the writ, but it is its duty in the exercise of a sound discretion to do so. We do not conceive that the bestowing by the statute upon the stockholder of this right gives to him a privilege that is his in his individual capacity. The right by the terms of the statute is given to the "stockholder;" and if it appears that it is sought to exercise the right not as a "stockholder," but in some capacity that is purely individual and in no way germane to the rela-

tionship of stockholder to corporation, then a case is presented which it never was the intention of the statute to provide for.

*Thiele*, 115 A. at 776.

5. 8 *Del.C.* § 219(c) provides in pertinent part:

(c) The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the stock ledger, the list required by this section or the books of the corporation, or to vote in person or by proxy at any meeting of stockholders.

and they should be viewed as such for purposes of the common law right of inspection.

In support of their argument, appellants cite *Fleisher Development Corp. v. Home Owners Warranty Corp.*, D.D.C., 647 F.Supp. 661 (1986), *modified*, D.D.C., 670 F.Supp. 27 (1987), *aff'd in part*, D.C.Cir., 856 F.2d 1529 (1988). In *Fleisher*, "members" of a non-stock corporation that administered a home owner warranty program for its member builders sought to compel the corporation to permit them to inspect the books and records of the corporation. Applying Delaware law, the court found Section 220 did not address the rights of members of a non-stock corporation, and thus Delaware common law applied. *Id.*, 647 F.Supp. at 668. The court determined that a "member" of a non-stock corporation possessed a common law right to inspect its books and records, and the right was enforceable by the issuance of a writ of mandamus if the member sustained his or her burden of showing a proper purpose for the inspection. *Id.*

This Court has yet to decide whether a member of a Delaware non-stock corporation has a right (either statutory or common law) to inspection of the corporation's books and records. *But cf. Scattered Corporation v. Chicago Stock Exchange, Inc.*, Del.Ch., C.A. No. 13703, 1994 WL 698612, Jacobs, J. (Dec. 2, 1994) (holding that member of non-stock corporation could not bring action in Court of Chancery pursuant to Section 220 for inspection of corporate books and records; citing *Fleisher* with approval for proposition that members of non-stock corporations are limited to the common law right of inspection). We need not reach the issue here because we decide only the case before us. *Paramount Communications, Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 51 (1994). Unlike the corporate entity considered in *Fleisher*, Agri–Mark is a *stock* corporation, and the rights of its members must be evaluated from this perspective.

■ As noted earlier, the common law right of inspection originated from one's status as a "stockholder" in the corporation whose stock he or she holds. "Both at common law and under the specific constitutional and statutory provisions, the right of inspec-

tion is essentially a right of [stock]holders, being an incident of stock ownership." 5A William Meade Fletcher, *Fletcher Cyclopedia on the Law of Private Corporations*, § 2230 at 438 (rev. ed. 1995). The right of inspection is personal to the stockholder and is not transferable to or for the benefit of others. *State ex rel. Bloch v. Sentry Safety Control Corp.*, Del.Super., 24 A.2d 587 (1942). As such, the right of inspection of a *stock* corporation's books and records under Delaware common law is exclusively reserved to the "stockholders" of the corporation.

Appellants' argument that, as a matter of equity, they should be recognized as "stockholders" of Agri–Mark since they are the "real" owners of the cooperative is unconvincing. While the appellants may assert certain rights arising out of the fiduciary relationship between themselves as equity owners and those who manage the affairs of the corporation, those rights do not extend to or include the attributes of record stockholders. Our corporate law has traditionally limited the rights of stockholders to *stockholders of record*. See *Rainbow Nav.*, 535 A.2d at 1360; *see also Enstar Corp. v. Senouf*, Del.Supr., 535 A.2d 1351, 1354 (1987) (noting that "for decades this Court ha[s] consistently defined the term 'stockholder' as a holder of record."). At common law, a corporation could look exclusively to its stock list in determining who was entitled to inspection. See, e.g., *State ex rel. Crowder v. Sperry Corp.*, Del.Super., 15 A.2d 661, 664 (1940) ("In law, the [beneficial owner of a voting trust] is a stranger to the corporation. His right is not governed by the common law rules applicable to stockholders, nor by the statute").

We continue to recognize the long-established rule that a corporation may rely on its stock ledger in determining which stockholders are eligible to vote or exercise the important rights of a stockholder. *Alabama By-Products v. Cede & Co.*, Del.Supr., 657 A.2d 254, 262–63 (1995); *Preston v. Allison*, Del. Supr., 650 A.2d 646, 649 (1994); *In re ENSTAR*, Del.Supr., 604 A.2d 404, 412 (1992); *Enstar Corp. v. Senouf*, Del.Supr., 535 A.2d 1351 (1987); *Rainbow Nav.*, 535 A.2d at 1359–60; *American Hardware Corp. v. Sav-*

*age Arms Corp.*, Del.Supr., 136 A.2d 690 (1957); *Salt Dome Oil Corp. v. Schenck*, Del. Supr., 41 A.2d 583, 589 (1945). The sole recognized exception is where the stock ledger is either blank or nonexistent. *Rainbow Nav.*, 535 A.2d at 1361. Only if a corporation fails in its affirmative duty to maintain a stock ledger may a court look to extrinsic evidence in deciding whether a party possesses record stockholder status. *Id.*

In this case, appellants are not stockholders of Agri–Mark, let alone stockholders of record. Agri–Mark has issued one share of stock to each member of its board of directors. As the only "stockholders" of Agri–Mark, the directors exclusively enjoy the rights incident to their share ownership, including the right of inspection under either Section 220 or the common law. In contrast, the rights of the appellants and other members of Agri–Mark are governed by the Marketing Agreements they executed as "members" of the cooperative. Their rights arise from contract and are limited by the terms of the Marketing Agreement. *See also Crowder*, 15 A.2d at 664. As "members" of a stock corporation, they do not enjoy any of the rights exclusively reserved for "stockholders" under either Delaware common law or the Delaware General Corporation Law. Just as a beneficial owner must recognize the risks inherent in choosing to register his or her shares in "street name" and thereby cede the rights of share ownership to the "record" owner of stock, *American Hardware*, 136 A.2d 690, so too have the appellants ceded the rights of stock ownership to the actual stockholders of Agri–Mark.

We hold, therefore, that a member of a Delaware *stock* corporation must be a "stockholder of record" to be entitled to inspect the books and records of the corporation under our common law. We are not unmindful of the situation in which appellants find themselves as equity owners who are denied the right to inspection, while those who have the status of stockholders have only a nominal ownership interest in the corporation. But appellants' plight is of their own making. They voluntarily chose to become "members" of Agri–Mark while others were designated as "stockholders," and, presumably, they were or should have been aware that their rights would be governed by the Marketing Agreements they executed. This Court does not insist on compliance with our corporate law merely for the sake of formality. *Alabama By–Products v. Cede & Co.*, 657 A.2d at 263. There are significant interests and relationships which spring from the status of "stockholder" under Delaware corporate law.[6] We simply cannot enlarge or expand the corporate law beyond its intended reach lest we compromise its consistency and established reliability.

---

6. Although here we address only stockholder status *viz-a-viz* the right of inspection, there are other significant attributes of being a stockholder which might be compromised if equitable entitlement to that status were awarded. *See, e.g.,* 8 *Del.C.* § 170 (right to dividends); 8 *Del.C.* § 228 (right to execute written consent); 8 *Del.C.* § 262(a) (right to appraisal).