# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TODD SWIFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0525-LWW |
| | ) | |
| HOUSTON WIRE & CABLE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: September 22, 2021
Date Decided: December 3, 2021

Blake A. Bennett, COOCH AND TAYLOR P.A., Wilmington, Delaware; W. Scott Holleman and Garam Choe, BRAGAR EAGEL & SQUIRE, P.C., New York, New York; *Counsel for Plaintiff Todd Swift*

Mark Hurd and Miranda Gilbert, MORRIS, NICHOLS, ARSHT, & TUNNELL LLP, Wilmington, Delaware; Kayvan Sadeghi, SCHIFF HARDIN LLP, New York, New York; Jin Yan, SCHIFF HARDIN LLP, Chicago, Illinois; *Counsel for Defendant Houston Wire & Cable Company*

**WILL, Vice Chancellor**

The plaintiff is a former stockholder of Houston Wire & Cable Company. He filed this action under Section 220 of the Delaware General Corporation Law hours after a certificate of merger was submitted to the Delaware Secretary of State and a merger agreement between Houston Wire and Omni Cable, LLC became effective. Under the terms of the merger agreement, the plaintiff ceased to be a stockholder of the company at that effective time.

Section 220(c) unambiguously requires that a plaintiff "is" a stockholder at the time of filing a books and records action. But the plaintiff's shares were cancelled before he filed suit, causing him to lose standing. The defendant's motion to dismiss is therefore granted.

## I.    BACKGROUND

Unless otherwise noted, the following facts are based on the plaintiff's Verified Complaint and the documents it incorporates by reference.[1] Any additional

---

[1] Verified Compl. ("Compl.") (Dkt. 1). *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms." (quoting *Fletcher Int'l, Ltd. v. ION Geophysical Corp.*, 2011 WL 1167088, at *3 n.17 (Del. Ch. Mar. 29, 2011))); *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint . . . ."); *Elf Atochem N. Am, Inc. v. Jaffari*, 727 A.2d 286, 287 n.1 (Del. 1999) (confining review in the context of a Rule 12(b)(1) motion to the allegations of the complaint and attached exhibits).

facts considered in this Memorandum Opinion are either not subject to reasonable dispute or are subject to judicial notice.[2]

## A.    The Merger Agreement

On March 24, 2021, Houston Wire & Cable Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Omni Cable, LLC and OCDFH Acquisition Sub.[3]  The Merger Agreement provided that Acquisition Sub would merge with and into Houston Wire, with Houston Wire surviving as a wholly owned subsidiary of Omni Cable, in an all-cash transaction valued at $91 million (the "Merger").[4]

The Merger Agreement explained that the Merger would "become effective at such time as [a] Certificate of Merger was filed with the Secretary of State of the State of Delaware" (the "Effective Time").[5]  At the Effective Time, each issued and

---

[2] *See, e.g.*, *In re Books–A–Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))); *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1167 n.3 (Del. Ch. 2002) ("The court may take judicial notice of facts publicly available in filings with the SEC.").

[3] Compl. ¶ 7.

[4] Pl.'s Answering Br. Ex. 1 ("Merger Agreement") § 1.01 (Dkt. 17).

[5] Merger Agreement § 1.03.

outstanding share of Houston Wire common stock would be cancelled and converted into the right to receive merger consideration of $5.30 in cash.[6]

The Merger Agreement stated that "Closing" (defined as "the closing of the Merger") would take place "at 9:00 A.M., St. Louis, Missouri time, as soon as practicable" after the satisfaction of certain conditions, unless the parties agreed in writing otherwise.[7]  On May 12, 2021, Houston Wire filed its definitive proxy statement and announced that a stockholder vote on the Merger would be held on June 15, 2021 at 10:00 a.m., Central Time.[8]

## B.    The Section 220 Demand

On June 7, 2021, plaintiff Todd Swift—then a stockholder of Houston Wire— sent a letter to Houston Wire demanding certain books and records pursuant to Section 220 of the Delaware General Corporation Law (the "Demand").[9]  The Demand sought to value the plaintiff's shares of Houston Wire stock and to investigate whether Houston Wire's board of directors had engaged in wrongdoing with regard to the Merger.[10]  Houston Wire responded to the Demand on June 14,

---

[6] Compl. ¶ 7; Merger Agreement § 2.01; Houston Wire & Company, Definitive Proxy Statement (Form 14A) (May 12, 2021) ("Proxy Statement"), at 28.

[7] Merger Agreement §§ 1.02, 8.14.

[8] Proxy Statement at 7.

[9] Compl. ¶ 9; Compl. Ex. 1.

[10] Compl. ¶ 11; Compl. Ex. 1 at 2.

2021, offering to meet and confer with the plaintiff about the Demand but noting certain purported deficiencies.[11]

## C. The Stockholder Vote and Certificate of Merger

A special meeting of Houston Wire stockholders was held on June 15, 2021.[12] At that meeting, over 60% of Houston Wire's outstanding shares of common stock voted in favor of the Merger.[13] Houston Wire filed a Certificate of Merger with the Delaware Secretary of State at 12:19 p.m. EDT that afternoon.[14] The Certificate of Merger stated that the Merger "shall become effective at such time as this Certificate of Merger is duly filed with the Secretary of State."[15] The Delaware Secretary of State certified the filing by endorsing the Certificate of Merger with "FILED 12:19 PM 06/15/21."[16]

---

[11] Compl. ¶ 14; Compl. Ex. 2 at 2.

[12] Houston Wire & Cable Company, Current Report (Form 8-K) (June 21, 2021).

[13] *Id.*

[14] Def.'s Mot. to Dismiss Ex. A ("Certificate of Merger") at 1 (Dkt. 9). The court may take judicial notice of filings with the Delaware Secretary of State. *See Walker v. Cabo Verde Cap., Inc.*, 2017 WL 2491516, at *1 (Del. Ch. June 8, 2017) (MASTER'S REPORT) ("The Court may take judicial notice of documents on file with the Secretary of State at the motion to dismiss stage." (citing *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. Mar. 7, 1995))), *adopted by* 2017 WL 2882383 (Del. Ch. June 26, 2017).

[15] Certificate of Merger at 2.

[16] *Id.*

### D.     This Litigation

On June 15, 2021 at 3:55 p.m., the plaintiff filed its Verified Complaint to Compel Inspection of Books and Records under Section 220.[17]  On August 31, 2021, Houston Wire moved to dismiss the Complaint for lack of standing.  Oral argument on the motion to dismiss was held on September 22, 2021.

## II.     LEGAL ANALYSIS

A party's standing can be challenged under Court of Chancery Rule 12(b)(1) or Rule 12(b)(6).  Where "the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1)."[18]  The plaintiff asserts that the defendant's motion to dismiss should be reviewed under a Rule 12(b)(6) standard because his standing is "inextricably tied to the merits of a Section 220 claim."[19]

For the reasons discussed below, the plaintiff lacks standing to pursue this action regardless of which provision of Rule 12 applies.  In either case, the allegations in the Complaint must be taken as true and all reasonable inferences must

---

[17] Dkt. 1.

[18] *Appriva S'holder Litig. Co. v. ev3, Inc.*, 937 A.2d 1275, 1285-86 (Del. 2007); *see also Spiro v. Vions Tech. Inc.*, 2014 WL 1245032, at *8 (Del. Ch. Mar. 24, 2014) ("When the issue of standing is related to the merits, a motion to dismiss is properly considered under Rule 12(b)(6) rather than 12(b)(1)." (internal citation omitted)).

[19] Corrected Pl.'s Answering Br. 2, 5-8 (Dkt. 18).

be drawn in favor of the plaintiff.[20] But the court cannot blindly accept the plaintiff's assertion that he has standing.[21] The provisions of the Merger Agreement coupled with the unambiguous language of Section 220 demonstrate otherwise, compelling the dismissal of this action.

### A. Section 220 Requires Current Stock Ownership When a Books and Records Complaint is Filed.

"Stockholders of Delaware corporations enjoy a qualified right to inspect the corporation's books and records."[22] This right to inspect corporate records was recognized at common law because "[a]s a matter of self-protection, the stockholder was entitled to know how his agents were conducting the affairs of the corporation

---

[20] *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (stating that a court evaluating a motion to dismiss for failure to state a claim must accept all well-pleaded allegations as true and "draw all reasonable inferences in favor of the non-moving party"); *de Adler v. Upper N.Y Inv. Co. LLC*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013) ("If a party moves to dismiss under Court of Chancery Rule 12(b)(1), the nonmoving party bears the burden of establishing the Court's jurisdiction. In this analysis, the Court should accept the material factual allegations in the complaint as true, and all inferences therefrom should be construed in the non-moving party's favor." (internal citations omitted)).

[21] *See Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Geo S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018) ("We decline, however, to accept conclusory allegations unsupported by specific facts or to draw unreasonable inferences in favor of the non-moving party."); *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (stating that a court reviewing a motion to dismiss should "ignore conclusory allegations that lack specific supporting factual allegations").

[22] *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 143 (Del. 2012).

6

of which he or she was a part owner."[23] The qualified inspection right that originated at common law was codified in 8 *Del. C.* § 220.[24] Section 220(b) provides that:

> Any stockholder . . . shall, upon written demand under oath stating the purpose thereof, have the right . . . to inspect for any proper purpose . . . the corporation's stock ledger, a list of its stockholders, and its other books and records. . . .[25]

Section 220(a) defines a "stockholder" as "a holder of record of stock in a stock corporation, or a person who is the beneficial owner of shares of such stock held either in a voting trust or by a nominee on behalf of such person."[26]

If a corporation or its agent refuses a stockholder's inspection demand or fails to respond within five business days, the stockholder is not without a remedy. Under Section 220(c), "the stockholder may apply to the Court of Chancery for an order to compel such inspection."[27] That a demand was made by a stockholder and refused is "necessary, but not sufficient, to proceed" with Section 220 litigation in this court.[28] As Vice Chancellor Glasscock explained in *Weingarten v. Monster*

---

[23] *Shaw v. Agri-Mark, Inc.*, 663 A.2d 464, 467 (Del. 1995).

[24] *See Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 119 (Del. 2006); *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del. 2002).

[25] 8 *Del. C.* § 220(b).

[26] 8 *Del. C.* § 220(a).

[27] 8 *Del. C.* § 220(c).

[28] *Weingarten v. Monster Worldwide, Inc.*, 2017 WL 752179, at *4 (Del. Ch. Feb. 27, 2017).

7

*Worldwide, Inc.*, Section 220(c) also requires that a plaintiff be a current stockholder at the time she files her complaint to have standing.[29] Section 220(c) mandates that:

> Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall *first establish* that:
>
> > (1) Such stockholder *is* a stockholder;
> >
> > (2) Such stockholder *has* complied with this section respecting the form and manner of making demand for inspection of such documents; and
> >
> > (3) The inspection such stockholder seeks is for a proper purpose.[30]

"The language of Section 220(c) is plain and unambiguous."[31] Where there is no ambiguity, the court must give effect to the expressed intent of the legislators and "the plain meaning of the statutory language controls."[32] The legislative intent behind the current ownership requirement of Section 220(c) is not difficult to

---

[29] *Id.* at *4.

[30] 8 *Del. C.* § 220(c) (emphasis added).

[31] *Weingarten*, 2017 WL 752179, at *5.

[32] *Dir. of Revenue v. CNA Hldgs., Inc.*, 818 A.2d 953, 957 (Del. 2003); *see Hazout v. Tsang Mun Ting*, 134 A.3d 274, 286 (Del. 2016) ("Where the statute is unambiguous, [Delaware courts] must adhere to the plain meaning of the statutory language."); *Chase Alexa, LLC v. Kent Cty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010) (explaining that the purpose of statutory construction is "to ascertain and give effect to the intent of the legislature, as expressed in the statute").

glean.[33]   A plaintiff must have first made a demand at a time when she was a stockholder.[34]  And the plaintiff must continue to be a stockholder when she initiates Section 220 litigation in this court.[35]

This court has recognized that stockholders can maintain standing if they lose their stock through a merger while their Section 220 litigation is pending.[36]  But they must be stockholders when that litigation is filed.[37]  Had the legislature intended otherwise, it could have done so expressly, as in other provisions of the DGCL.[38]

---

[33] *See Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 80 A.3d 155, 158 (Del. Ch. 2013) ("There is a presumption that the General Assembly carefully chose particular language when writing a statute . . . .").

[34] 8 *Del. C.* § 220(b).

[35] 8 *Del. C.* § 220(c).

[36] *See Weingarten*, 2017 WL 752179, at *5 (discussing *Cutlip v. CBA Int'l, Inc. I*, 1995 WL 694422 (Del. Ch. Oct. 27, 1995), and *Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, 2005 WL 1713067 (Del. Ch. July 13, 2005)).

[37] *See Weingarten*, 2017 WL 752179, at *5 (describing the legislative intent as requiring that "only those who are stockholders at the time of filing have standing to invoke this Court's assistance under Section 220"); *Walker*, 2017 WL 2491516, at *3 (dismissing Section 220 litigation where the plaintiff could not "first establish" that he was a stockholder when the action was filed); *see also Willard v. Harrworth Corp.*, 267 A.2d 577, 579 (Del. 1970) (affirming the Court of Chancery's finding that a former stockholder could not demand books and records of a company that ceased to exist after a merger); *Cutlip*, 1995 WL 694422, at *2 (explaining that the plaintiffs had standing to bring a Section 220 action because they were record owners of the corporation's stock at the time the action was filed).

[38] *See, e.g.*, 8 *Del. C.* § 213(a) (providing that stockholders entitled to receive notice of a meeting are those holding shares as of the record date); 8 *Del. C.* § 262(a) (limiting appraisal rights to "[a]ny stockholder of a corporation of this State who holds shares of stock on the date of the making of a demand").

9

## B. The Plaintiff Lost Standing to Pursue This Action at the Effective Time.

The plaintiff was not a stockholder at the time he filed this action. The Merger Agreement provides that each share of Houston Wire's common stock was cancelled and converted into the right to receive $5.30 in cash at the Effective Time.[39] The plaintiff filed this action several hours after the Effective Time. He therefore cannot satisfy the current holder requirement of Section 220(c).

The plaintiff contends that the closing of the Merger—rather than the Effective Time—should be viewed as the relevant event for purposes of standing. He posits that because the Merger Agreement states that "Closing" would occur "at 9:00 A.M., St. Louis, Missouri time . . . unless another time or date is agreed to in writing by the parties," the Merger could not have closed until June 16, 2021 at 9:00 a.m. Central Time absent an agreement.[40]

In *Weingarten*, a former stockholder lacked standing to pursue a Section 220 action where the relevant transaction "closed" three weeks before his complaint was filed.[41] The court did not, however, distinguish between the day of closing and the

---

[39] Merger Agreement §§ 1.01, 1.03, 2.01

[40] Corrected Pl.'s Answering Br. 13 (quoting Merger Agreement § 1.02).

[41] 2017 WL 752179, at *6.

10

effective time of the merger. Rather, the court recognized that the relevant inquiry is whether a plaintiff is a stockholder when she files her complaint.[42]

Delaware law required that the Merger Agreement state "[t]he manner . . . of cancelling some or all of such shares."[43] The Merger Agreement set the Effective Time as the point when stockholders ceased to own stock in Houston Wire.[44] Under Section 251 of the DGCL, the Merger Agreement "bec[a]me effective, in accordance with [Section 103]"[45] when Houston Wire filed the Certificate of Merger with the Delaware Secretary of State.[46]

When an instrument (such as a certificate of merger) is filed in accordance with Section 103, the Delaware Secretary of State certifies it "by endorsing upon the signed instrument the word 'Filed' and the date and time of its filing. This endorsement is the 'filing date' of the instrument and is conclusive of the date and

---

[42] *Id.* at *5 ("[T]he legislature has made clear that only those who are stockholders at the time of filing have standing to invoke this Court's assistance under Section 220."); *see also Walker*, 2017 WL 2491516, at *1 (holding that a stockholder lost standing and noting that a merger was "effective November 6, 2015, upon the filing of a Certificate of Merger with the Delaware Secretary of State").

[43] 8 *Del. C.* § 251(b)(5).

[44] Merger Agreement § 2.01.

[45] 8 *Del. C.* § 251(c).

[46] Certificate of Merger at 2. The plaintiff asserts that the court must convert the motion to dismiss into a motion for summary judgment because the defendant has "introduce[d] extrinsic evidence" in the form of the Certificate of Merger. *See* Pl.'s Answering Br. at 8. As noted above, the court may take judicial notice of filings with the Delaware Secretary of State. *See supra* note 2.

11

time of its filing in the absence of actual fraud."[47] An instrument filed in accordance with Section 103 "shall be effective upon its filing date."[48] The Delaware Secretary of State endorsed the Houston Wire Certificate of Merger with the word "FILED" and a time stamp of June 15, 2021 at 12:19 p.m.[49]

Houston Wire shares continued to trade in the hours following the Effective Time because Nasdaq did not suspend trading in Houston Wire shares until the close of business.[50] That period of continued trading does not change the reality that, under the Merger Agreement, the instruments being traded represented "only the

---

[47] 8 *Del. C.* § 103(c)(3). No allegations of fraud were pleaded in this case. The purpose, timing, or legality of the merger are not issues before me in this Section 220 proceeding. *See Cutlip*, 1995 WL 694422, at *2 & n.2, *3; *Walker*, 2017 WL 2491516, at *2 ("This Court has declined to enlarge the scope of a Section 220 proceeding to determine the validity of an underlying merger, assuming instead that the merger was valid.").

[48] 8 *Del. C.* § 103(d); *see Brazen v. Bell Atl. Corp.*, 1997 WL 153810, at *6 n.33 (Del. Ch. Mar. 19, 1997) (stating that a merger "agreement shall be effective upon its filing date"); 1 Robert S. Saunders et al., *Folk on the Delaware General Corporation Law*, § 103.05 at 1-69 (7th ed. 2021) ("Unless otherwise established by the Secretary of State upon request, the 'filing date' of the instrument is the date and time of its delivery. Unless otherwise specified in the instrument, the instrument is effective upon the 'filing date.'" (citing 8 *Del. C.* §§ 103(c)(4), 103(d))).

[49] Certificate of Merger at 2; *supra* note 16.

[50] *See* Houston Wire & Cable Company, Current Report (Form 8-K) (June 15, 2021) Ex. 99.1 (Press Release). When a corporation is acquired in a merger and its securities cease to exist, securities might not be delisted and trading might not be suspended until the closing bell on the day the merger is completed. *See* Nasdaq, *Nasdaq Listing Center Reference Library Identification Number 25*, https://listingcenter.nasdaq.com, https://listingcenter.nasdaq.com/Material_Search.aspx?materials=25&mcd=LQ&criteria= 2&cid=120,1,108,157,14,22,126,142,29,107,34,37,38,45,16,110,52,71,156,69 (last visited Dec. 3, 2021). Houston Wire's closing stock price on June 15, 2021 was $5.30— equal to the Merger Consideration. *See* Barchart, *Houston Wire Cable (HWCC)*, https://www.barchart.com/stocks/quotes/HWCC (last visited Dec. 3, 2021).

right to receive the Merger Consideration payable in respect thereof."[51] Beyond that, the shares were "cancelled."[52]

Ultimately, Section 220(c) requires that one "first establish" that she "is" a stockholder when filing a Section 220 complaint.[53] Despite alleging otherwise, the plaintiff simply cannot satisfy that requirement. Section 220(c) does not have an exception for complaints filed soon after a plaintiff ceases to be a stockholder. A plaintiff either "is" a stockholder with standing or is not. That may be—as the plaintiff calls it—a "harsh result."[54] But this court has long recognized that "strict adherence to the requirements of 8 *Del. C.* § 220 is mandated."[55] This action therefore must be dismissed.

## III. CONCLUSION

For the reasons explained above, the Complaint is dismissed because the plaintiff lacks standing to proceed.

---

[51] Merger Agreement §§ 2.01(b), 2.02(b).

[52] *Id.*; *see Willard*, 267 A.2d at 579 (explaining that where stockholders lost their legal right except to "exchange their obsolete shares of Harrworth, Inc." the appellant "ha[d] no standing as a stockholder of Harrworth, Inc. to demand the inspection").

[53] 8 *Del. C.* § 220(c).

[54] Corrected Pl.'s Answering Br. 14.

[55] *Gay v. Cordon Int'l Corp.*, 1978 WL 2491, at *1 (Del. Ch. Mar. 31, 1978) (citing *Bear, Stearns & Co. v. Pabst Brewing Co.*, C.A. No. 5456 (Del. Ch. Nov. 23, 1977)); *see also Cent. Laborers*, 45 A.3d at 145 ("Delaware courts require strict adherence to the section 220 inspection demand procedural requirements.").