

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Francisco J. Domenech Ferández<br>    Peticionario<br><br>        v.<br><br>Integration Corporate Services, PSC; Ricardo E. Soto Miranda, en su capacidad oficial como único director y único oficial de Integration Corporate Services, PSC; y Guillermo J. Zúñiga López, en su capacidad Oficial como Administrador de Integration Corporate Services, PSC<br>    Recurridos | Certiorari<br><br>2013 TSPR 1<br><br>187 DPR ____ |

Número del Caso: CC-2011-875

Fecha: 3 de enero de 2013

Tribunal de Apelaciones:

        Región Judicial de San Juan

Abogados de la Parte Peticionaria:

        Lcda. Verónica Ferraiouli
        Lcdo. Carlos Díaz Olivo

Abogado de la Parte Recurrida:

        Lcda. César T. Alcover

Materia: Corporaciones – Art. 7.10 de la Ley General de Corporaciones. Presentación de prueba extrínseca para probar titularidad sobre acciones; derecho de accionista a inspecciones libros de la Corporación.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco J. Domenech Fernández<br><br>Peticionario<br><br>v.<br><br>Integration Corporate Services, PSC; Ricardo E. Soto Miranda, en su capacidad oficial como único director y único oficial de Integration Corporate Services, PSC; y Guillermo J. Zúñiga López, en su capacidad oficial como Administrador de Integration Corporate Services, PSC<br><br>Recurridos | CC-2011-875 | |

Opinión del Tribunal emitida por el Juez Asociado Señor Martínez Torres.

En San Juan, Puerto Rico, a 3 de enero de 2013.

Este caso nos permite resolver, por primera vez, si bajo el Art. 7.10 de la Ley General de Corporaciones, Ley Núm. 164-2009, 14 L.P.R.A. sec. 3650, es admisible la presentación de evidencia extrínseca para probar que el solicitante es accionista o si ese estatus solo puede acreditarse mediante certificados de acciones o el registro de acciones de la corporación.

I

El 27 de enero de 2011 el licenciado Francisco J. Domenech Fernández solicitó ante el Tribunal de Primera

Instancia una orden para que Integration Corporate Services, P.S.C., su presidente, director y accionista mayoritario, el licenciado Ricardo E. Soto Miranda, y su administrador, el Sr. Guillermo J. Zúñiga López, mostraran los libros y récords financieros de la corporación. Según su certificado de incorporación, la empresa se dedica a ofrecer asesoría legal en asuntos corporativos, legislación y gobierno, y al litigio civil, comercial y laboral. La solicitud se hizo al amparo del Art. 7.10 de la Ley General de Corporaciones, íd.

La petición jurada partía de la premisa de que desde el 1 de enero de 2009 el licenciado Domenech Fernández advino accionista minoritario de la corporación en controversia como propietario del 30% de las acciones, y que el licenciado Soto Miranda era accionista mayoritario, con el 70% de las acciones. La corporación se inscribió el 8 de octubre de 2008.

Según la petición que se presentó al Tribunal, el señor Zúñiga López enviaba los informes mensuales sobre los ingresos, gastos, cuentas por cobrar y proyecciones financieras de la corporación a quienes se consideraban accionistas, pero que esa práctica cesó a comienzos del 2010. El licenciado Domenech Fernández aseguró al Tribunal de Primera Instancia que solicitó la información directamente al señor Zúñiga López y al licenciado Soto Miranda en varias ocasiones y, más formalmente, vía correo certificado en enero de 2011, sin recibir respuesta. Ello

motivó la petición al Tribunal de Primera Instancia, pues tiene interés en obtener información financiera de la corporación que le permita calcular adecuadamente las compensaciones de las que reclama ser acreedor.

Los demandados contestaron la solicitud de orden el 8 de febrero de 2011. Negaron ante el Tribunal que el licenciado Domenech Fernández fuera accionista, pues solo reconocieron como único accionista y director al licenciado Soto Miranda. Según la contestación, el licenciado Domenech Fernández no era accionista porque nunca pagó por las acciones que reclama, no se firmó un contrato de suscripción para esas acciones, la corporación nunca emitió un certificado de acciones a su favor, su nombre no constaba en el registro de acciones y carecía de documentos corporativos oficiales que le reconocieran como accionista, según las formalidades que exige la Ley General de Corporaciones, supra, 14 L.P.R.A. sec. 3501. Los recurridos alegaron que el licenciado Domenech Fernández solo fue un empleado de la corporación desde el 1 de enero de 2009, cuando advino director de la División de Legislación y Gobierno y vicepresidente de Integration.

Además, en la contestación, los recurridos reconvinieron. Imputaron al licenciado Domenech Fernández faltar a la lealtad y deber de fiducia que tenía como oficial de la corporación. La imputación consiste en que supuestamente el licenciado Domenech Fernández instruyó a varios de los clientes de Integration a cancelar sus

contratos para firmar otros con una nueva corporación que creó el letrado. Así, los recurridos reclamaron una indemnización por daños a la corporación, que estiman en más de $330,000 y $500,000 adicionales por las oportunidades de negocio alegadamente usurpadas.

El Tribunal de Primera Instancia celebró varias vistas evidenciarias. En ellas recibió prueba documental y los testimonios de siete testigos. Finalmente, el foro primario dictó sentencia parcial el 7 de abril de 2011. Reconoció al licenciado Domenech Fernández como accionista y concluyó que el interés que esbozó en su petición constituía un propósito válido. Por consiguiente, ordenó a los demandados-recurridos mostrarle los libros y récords financieros de la corporación. Limitó la inspección a aquellos que fueran necesarios para calcular los bonos de producción y dividendos que correspondían. Se excluyó de la orden la información sobre los contactos de los clientes y se prohibió la divulgación de la información a terceros.

Por tratarse de un procedimiento extraordinario, el tribunal limitó la sentencia parcial a la determinación de si el licenciado Domenech Fernández era accionista. Los demás reclamos que se presentaron en reconvención, sobre deslealtad e incumplimiento con deberes fiduciarios de su parte, se refirieron al trámite ordinario.

Los demandados-recurridos acudieron ante el Tribunal de Apelaciones. Señalaron que el Art. 7.10 de la Ley General de Corporaciones, supra, es claro en requerir que

el solicitante de la orden sea un accionista reconocido en el registro de accionistas de la corporación. De esta forma, señalaron que al aceptar evidencia extrínseca al registro de accionistas, el Tribunal de Primera Instancia desvirtuó el carácter sumario y expedito del proceso, y simultáneamente, restó validez a los documentos de gobierno corporativo.

El Tribunal de Apelaciones dictó sentencia revocatoria. Estimó que el licenciado Domenech Fernández no es un accionista inscrito ni acreditó su status de accionista con documentos corporativos, por lo que no tiene derecho al remedio que provee el Art. 7.10 de la Ley General de Corporaciones, supra.

De esa determinación, el licenciado Domenech Fernández recurre ante nos. Plantea que erró el Tribunal de Apelaciones al descartar la evidencia y la teoría de los actos propios, que sin articularlo explícitamente, el Tribunal de Primera Instancia avaló con su sentencia. Los recurridos se oponen a la aplicación de la doctrina de los actos propios, por no haberse presentado ante el Tribunal de Primera Instancia, y a que se utilice prueba extrínseca para determinar la calidad de accionista del licenciado Domenech Fernández, contrario a la definición que provee el Art. 7.10 de la Ley General de Corporaciones sobre lo que es un accionista.

El 3 de febrero de 2012 expedimos el auto de certiorari. Además, convocamos a una vista oral que se celebró el 16 de octubre de 2012.

En la vista, los abogados del peticionario plantearon que la evidencia que consta en el expediente del caso, cuyo contenido no se refutó, demuestra que el licenciado Domenech Fernández era accionista de la corporación. Señalaron que pagó por sus acciones con sus contactos y los servicios prestados. Sin embargo, reconocieron que no podían explicar cómo se hizo la transferencia de esas acciones porque los documentos corporativos no proveen información para hacer un tracto de ello. Enfatizaron que las corporaciones que tienen pocos accionistas se caracterizan por la informalidad en el manejo de sus libros corporativos.

Por su parte, el abogado del recurrido insistió en que el procedimiento bajo el Art. 7.10 de la Ley General de Corporaciones no es el indicado para dilucidar la titularidad sobre unas acciones corporativas cuando los libros no reconocen tal titularidad. Esto se debe a que es un procedimiento que impide la presentación de prueba extrínseca, más allá de los libros corporativos. Además, se fundamentó en que el procedimiento no provee para la presentación sobre prueba del valor de las acciones que ayude a determinar si el licenciado Domenech Fernández pagó por ellas. Sin embargo, reconoció que la prueba de pago por parte de alguien que reclame ser accionista, sería la mejor

para mostrar su derecho sobre las acciones. No pudo explicar en qué se diferencia la presentación de prueba de pago de la presentación de otro tipo de prueba extrínseca.

Con el beneficio de esa vista oral y los alegatos de las partes, resolvemos.

II

A. La evidencia cuya admisibilidad es objeto de la controversia en este caso consiste en múltiples cartas y documentos que generó la corporación en el curso de sus negocios. De ellos se desprende el reconocimiento y el trato que el presidente y el administrador de la corporación dieron al licenciado Domenech Fernández como accionista. Esa evidencia es extrínseca a los documentos de gobierno de la empresa.

Entre esos documentos se destaca la carta de oferta de empleo que inició la relación entre Integration Corporate Services, P.S.C. y el licenciado Domenech Fernández. Esa carta la firmó el licenciado Soto Miranda, como presidente de la corporación el 23 de diciembre de 2008. En ella el licenciado Soto Miranda ofreció al licenciado Domenech Fernández **el 30% de las acciones de la corporación** que le permitiría recibir una compensación al finalizar el año por concepto del pago de dividendos, adicional al salario mensual de $10,000. Además, se le ofreció un estipendio de transportación de $834 mensual, una cuenta para gastos de representación por $26,400 anual, cobertura de plan médico, el pago del teléfono celular, el pago de las colegiaciones

como abogado, y el pago de gastos operacionales y de oficina. Por último, la corporación se comprometió a pagarle un bono de $25,000 al finalizar el año y otro bono de producción que dependería de los ingresos que generaran los clientes que trajera el licenciado Domenech Fernández a la corporación. Se indicó que el paquete de compensaciones tenía un valor aproximado de $290,000 al año.[1] La carta no requirió al licenciado Domenech Fernández ningún pago o impuso alguna condición para la entrega de la titularidad de las acciones, más allá de la aceptación de la oferta.

---

[1] El texto de la carta indica, textualmente:
    "Dear Francisco:
       It is with great pleasure and honor that Integration Corporate Services, PSC would like to present to you an official offer of employment under the following compensation structure:
    1)   A salary, beginning on January 1st, 2009, of $10,000.00 a month or $120,000.00 annually.
    2)   A car allowance of $834.00 a month or $10,008.00 annually.
    3)   An expense account of $26,400.00 a year.
    4)   Health Insurance Coverage from Triple-S.
    5)   Mobile Phone expenses.
    6)   Payment of Puerto Rico & Federal Bar Association License Fees.
    7)   Payment of all office & operational expenses.
       Finally, the Corporation will offer you a 30% ownership of the Company, which will entitle you to receive an additional compensation at the end of the year by distribution of dividends of the net income of the business. In addition, the Company guarantees a performance bonus payment at the end of the year of $25,000.00 and a final production bonus based on the income generated by clients that you bring to the Corporation.
       This total compensation package is worth approximately $290,000.00 annually.
       Once again, it will be a great pleasure to have you as one of our shareholders and to share with you the future success of our Company.
    Sincerely,
    Ricardo Soto-Miranda, Esq.
    President"

Una vez aceptada la oferta, la corporación imprimió una tarjeta de presentación para el licenciado Domenech Fernández con el logo corporativo. **En la tarjeta de presentación se identifica al peticionario como accionista.**

El 18 de junio de 2009 el licenciado Soto Miranda solicitó al señor Zúñiga López, vía correo electrónico, una proyección del flujo de efectivo disponible en la corporación "para liquidarle a Francisco su **pago de dividendo** (sic) de 2009".

Entre enero y marzo de 2009 el licenciado Soto Miranda envió correos electrónicos a contactos en varias empresas, entre ellas, R.J. Reynolds, Pfizer, Alliance of Automobile Manufacturers, Amgen, Direct TV, Onelink, Phantom Fireworks, Baxter, Nestlé y la Asociación de Industria Farmacéutica. Los correos electrónicos a **más de diez empresas** informaban que el licenciado Domenech Fernández se unió a la corporación **como accionista**, o se les anejó un perfil que lo identificó como tal, y además, como Director de la División de Legislación y Relaciones con el Gobierno.

En una carta de 19 de enero de 2009 dirigida al agente Steven Bermúdez, de Caribe Federal Credit Union, el administrador de Integration informó la compensación que recibía el licenciado Soto Miranda como presidente de la corporación, y además, hizo constar que era el dueño del 70% de las acciones. Por la naturaleza del documento, no se informó quién era el propietario del 30% restante de las acciones. Sin embargo, el 16 de julio de 2009 y el 11 de

marzo de 2010 el licenciado Soto Miranda envió dos cartas distintas a oficiales hipotecarios del Westernbank, en las que señaló al licenciado Domenech Fernández como **dueño del 30% de las acciones** de Integration desde el 1 de enero de 2009.

El 28 de febrero de 2009 Integration Corporate Services solicitó una póliza de seguro por responsabilidad profesional a la aseguradora AIG. En la solicitud el licenciado Soto Miranda incluyó al licenciado Domenech Fernández como asociado, oficial corporativo y accionista de la corporación. La corrección de tal información está juramentada en el mismo documento, pues ofrecer información falsa en la solicitud de un seguro constituía un delito grave sujeto a penalidades.

Sin embargo, en las solicitudes juramentadas correspondientes a los dos años siguientes, 2010 y 2011, solo se incluyó al licenciado Soto Miranda como socio, oficial corporativo y accionista. Al licenciado Domenech Fernández se le incluyó entre los abogados empleados de la corporación.

En octubre de 2009 el licenciado Domenech Fernández envió un correo electrónico a un ejecutivo de la farmacéutica Pfizer para diferenciar a Integration Corporate Services de Zúñiga & Soto Miranda, P.S.C. En uno de los documentos anejos se identifica al licenciado Domenech Fernández como accionista de Integration Corporate Services, junto con el licenciado Soto Miranda. Este último

y el señor Zúñiga López eran los accionistas de Zúñiga & Soto Miranda, P.S.C. antes de que desaforáramos al señor Zúñiga López, administrador actual de Integration Corporate Services.

En la solicitud para incluir a Integration Corporate Services en el **registro de cabilderos** del Senado se contaron **como accionistas** de la corporación a los licenciados Soto Miranda y Domenech Fernández. El certificado de registro tiene fecha de 22 de octubre de 2010.

En el expediente consta un contrato entre el Instituto de Banca e Integration Corporate Services que data de 2009, y otro entre AT&T e Integration Corporate Services que se firmó en 2010. En ambos el licenciado Domenech Fernández firmó como accionista de la corporación.

Otro elemento en que se dio trato de accionista al licenciado Domenech Fernández fue en el pago de las bonificaciones que otorgaba la empresa, que se distribuían en una proporción de 70-30% entre los licenciados Soto Miranda y Domenech Fernández, respectivamente. Esas compensaciones eran adicionales al salario, e incluían el bono de producción y un llamado "bono de ganancias".

Este último bono es objeto de controversia porque el demandante-peticionario lo señala como pago de dividendos, y así lo denominan también su administrador y presidente en los intercambios de correos electrónicos internos. Sin embargo, el contable de la corporación, David Rodríguez, y

su presidente, en las vistas ante el Tribunal de Primera Instancia, rechazaron reconocerlo como tal. El Tribunal de Primera Instancia concluyó que ese llamado bono de ganancias verdaderamente se trataba de la distribución de dividendos para propósitos de la Ley General de Corporaciones.

En las vistas ante el Tribunal de Primera Instancia, el licenciado Soto Miranda indicó que trató al licenciado Domenech Fernández como accionista porque inicialmente tuvo la intención de que lo fuera, luego de que pagara por el 30% de las acciones. Sin embargo, alegó que desistió de esa intención cuando descubrió que el licenciado Domenech Fernández inició otra corporación que competía con Integration Coporate Services.

B. A pesar de que los documentos reseñados representaban al licenciado Domenech Fernández como accionista de la corporación, los documentos de gobierno de la empresa presentan otro cuadro. Señalan al licenciado Domenech Fernández meramente como el director de la División de Legislación y Relaciones con el Gobierno y, posteriormente, como vicepresidente.

Integration Corporation Services, P.S.C. se registró ante el Departamento de Estado el 8 de octubre de 2008 como una corporación de servicios profesionales. Su Certificado de Incorporación detalla que el capital autorizado de la

corporación se compone de 10,000 acciones comunes, con un valor par de $100.

En una minuta titulada "Consent of Sole Director in Lieu of Meeting of Integration Corporate Services, PSC" se informó que el licenciado Soto Miranda, único oficial y miembro de la junta de directores de la corporación, pagó $1,000 para la adquisición de 10 de las acciones de la entidad. Además, hizo una aportación de $23,499 para el capital de la corporación, a utilizarse en la compra de equipo y materiales. Esa minuta tiene fecha del 14 de octubre de 2008. Del testimonio del licenciado Soto Miranda en las vistas ante el Tribunal de Primera Instancia surgió que la corporación repagó las aportaciones que realizó.

En otra minuta fechada el 8 de enero de 2009 se informó **la oferta** que se hizo al licenciado Domenech Fernández y **su aceptación**, por lo que comenzaría a trabajar para la corporación en enero de 2009. En la minuta no se mencionó que el licenciado Domenech Fernández adviniera accionista a raíz de la aceptación de la oferta, pero se indicó que la carta de oferta se anejaba al documento. Esa carta es la que ofreció al licenciado Domenech Fernández el 30% de las acciones como parte de la oferta.

El expediente del caso incluye tres minutas tituladas "Consent of Stockholder in Lieu of Annual Meeting of Integration Corporate Services, PSC", del 12 de enero de 2009, del 12 de enero de 2010 y del 11 de enero de 2011.

Las tres indican que el licenciado Soto Miranda era el único accionista de la corporación.

Se fechó otra minuta el 12 de enero de 2009 titulada "Consent of Sole Director in Lieu of Annual Meeting of Integration Corporate Services, PSC". Esta documentó la oferta que hizo la corporación al licenciado Domenech Fernández como Director de la División de Legislación y Relaciones con el Gobierno. Pero tampoco le reconoció como accionista ni hizo mención del ofrecimiento del 30% de las acciones que constaba en la carta oferta de empleo. Una minuta igualmente titulada, pero con fecha del año siguiente, indicó que se eligió al licenciado Domenech Fernández como vicepresidente de la corporación. En la minuta igualmente titulada, pero con fecha de 11 de enero de 2011, se informó de la terminación de la relación con el licenciado Domenech Fernández como vicepresidente y Director de la División de Legislación y Relaciones con el Gobierno de la Corporación.

Una minuta de 1 de septiembre de 2009 da cuenta de una reunión de la Junta de Directores con el contable de la corporación, David Rodríguez, para recibir el estado financiero. Se atribuyó la presencia del licenciado Domenech Fernández a que era invitado por ser Director de la División de Legislación y Gobierno, pero no le reconoció como accionista. Una minuta similar tiene fecha del año siguiente, el 30 de marzo de 2010.

Otra minuta titulada "Consent of Sole Director in Lieu of Special Meeting of Integration Corporate Services, PSC", fechada el 31 de marzo de 2010, indica las compensaciones que se otorgarían a los licenciados Soto Miranda, Domenech Fernández y al señor Zúñiga López. Tampoco se reconoció al licenciado Domenech Fernández como accionista, sino como vicepresidente y consultor especial.

Por último, el 19 de diciembre de 2010 el licenciado Soto Miranda envió una carta al licenciado Domenech Fernández para notificarle la terminación de la relación profesional.[2]

El Tribunal de Primera Instancia, luego de celebrar vistas durante tres días, restó credibilidad a estos documentos corporativos, que confeccionó únicamente el presidente de la corporación, quien también fue su único custodio. Encontró "múltiples y consistentes incongruencias". Entre ellas, principalmente, que no reconocían que el licenciado Domenech Fernández fuera accionista a pesar de que los documentos y correos electrónicos que circulaba la corporación en el curso de

---

[2] La carta de terminación de la relación profesional indica:
"Lcdo. Domenech:
    Por este medio estamos confirmando que, debido a las circunstancias que usted conoce y hemos discutido, estamos terminando su relación profesional con Integration Corporate Services, PSC, efectivo el 15 de diciembre de 2010.
    Próximamente nos estaremos comunicando con usted para discutir los términos y condiciones de la terminación de la relación.
Cordialmente,
Lcdo. Ricardo Soto-Miranda
Presidente"

sus operaciones diarias, consistentemente lo reconocían como tal.

Además, la minuta que recogió la oferta de empleo al licenciado Domenech Fernández ignoró el ofrecimiento de ser accionista de la corporación. También en la minuta de la Junta de Directores correspondiente a marzo de 2010 se informó que IPSA Consulting, Inc. prestó servicios a Integration Corporate Services desde el 2009. Sin embargo, esa empresa perteneciente al señor Zúñiga López se incorporó el 31 de marzo de 2010, el año siguiente. Por último, las minutas dejaron de identificar al señor Zúñiga López como licenciado desde antes que le desaforáramos.

III

El Art. 7.10 de la Ley General de Corporaciones, supra,[3] viabiliza el derecho de todo accionista de una

---

[3] En lo pertinente, el Art. 7.10 de la Ley General de Corporaciones de 2009 señala:

"(a) Para efectos de esta sección:
(1) Accionista.-Significa accionista inscrito en el registro de acciones de la corporación autorizada a emitir acciones, o una persona que es el beneficiario de un fideicomiso de votos en el cual están depositadas dichas acciones o miembros de corporaciones sin acciones de capital…
(3) Bajo juramento.-Son declaraciones en las cuales el declarante afirma que las mismas son ciertas, bajo pena de perjurio, según las leyes del Estado Libre Asociado de Puerto Rico…
(b) Cualquier accionista, por sí o por apoderado u otro agente, mediante requerimiento jurado en donde consigne su propósito, tendrá el derecho de examinar, así como de hacer copias o extractos, para cualquier propósito válido durante las horas regulares de oficina:
(1) El registro de acciones, la relación de

accionistas y los demás libros de la corporación…

En cada caso en que el accionista sea distinto al accionista inscrito en una corporación autorizada a emitir acciones o del miembro de corporaciones sin acciones de capital, el requerimiento jurado deberá declarar su condición de accionista, acompañarse de evidencia documental de su derecho de propiedad sobre la acción, y declarar que la evidencia documental es copia veraz y correcta de lo que se aparenta probar. "Propósito válido" significará un propósito que se relacione razonablemente con el interés de la persona como accionista. En cada caso, cuando un apoderado u otro agente sea la persona que solicita el derecho de examen, el requerimiento bajo juramento deberá acompañarse con un poder u otro escrito que autorice al apoderado u otro agente a actuar de ese modo a nombre del accionista. El requerimiento bajo juramento se dirigirá a la oficina designada de la corporación en el Estado Libre Asociado de Puerto Rico.

(c) Si la corporación, o un oficial o agente de la misma, se negare a permitir la inspección requerida por un accionista, su apoderado u otro agente actuando a nombre del accionista, según se dispone en el inciso (b) de esta sección, o no responde a la solicitud antes de trascurridos los cinco (5) días laborables posteriores al requerimiento, el accionista podrá recurrir al Tribunal de Primera Instancia (Sala Superior) para solicitar que emita una orden que obligue a la corporación a permitir tal inspección. Por la presente, se le otorga jurisdicción exclusiva al Tribunal de Primera Instancia (Sala Superior) para determinar si la persona que solicita el examen tiene derecho o no al examen que se solicita. El tribunal podrá ordenar sumariamente a la corporación que permita al accionista examinar el registro de acciones, la relación existente de accionistas y los otros libros de la corporación, y hacer copias y extractos de los mismos. El tribunal también podrá ordenar a la corporación suplir al accionista una relación de sus accionistas a una fecha determinada con la condición de que el accionista, con anterioridad pague a la corporación el costo razonable de obtener y proveer tal relación, y otras condiciones que el tribunal estime apropiadas. Cuando el accionista procure examinar los libros y cuentas de la corporación que no sean el registro de acciones o la relación de accionistas, deberá demostrar que:

corporación a solicitar la inspección del registro de acciones, la relación de accionistas y los demás libros de la corporación. En la petición se debe juramentar el

---

(1) Es un accionista;

(2) ha cumplido con esta sección, con respecto a la forma y la manera de hacer el requerimiento de examen de tales documentos, y

(3) que la inspección que procura es para un propósito válido.

Cuando el accionista procure examinar el registro de acciones de la corporación o la relación de accionistas y dejase establecido que es un accionista y ha cumplido con esta sección con respecto a la forma y manera de hacer el requerimiento para examinar tales documentos, recaerá sobre la corporación la obligación de probar que la inspección solicitada no es para un propósito válido.

El tribunal podrá imponer discrecionalmente cualquier limitación o condición con respecto al examen o conceder cualquier otro remedio que estime justo y razonable. El tribunal podrá ordenar que se traigan al Estado Libre Asociado de Puerto Rico y se mantengan dentro de esta jurisdicción, según los términos y condiciones de dicha orden, los libros, documentos y cuentas, extractos pertinentes de los mismos o copias debidamente autenticadas de los mismos.

(d) Cualquier director tendrá derecho a examinar el registro de acciones, la relación de accionistas y los otros libros y cuentas de la corporación si tiene un propósito razonablemente relacionado con su cargo de director. Por la presente, se le otorga al Tribunal de Primera Instancia (Sala Superior) la jurisdicción exclusiva para determinar si un director tiene derecho o no al examen solicitado. El tribunal podrá ordenar sumariamente a la corporación que permita al director inspeccionar cualquiera o todos los libros y cuentas, el registro de acciones y la relación de acciones y hacer copias y extractos de los mismos. Recaerá sobre la corporación la obligación de probar que la inspección solicitada por el director es para un propósito inválido. El tribunal, en uso de su discreción, podrá imponer cualquier limitación o condición con respecto al examen o conceder cualquier otro remedio que estime justo y razonable".

propósito de la inspección, que debe ser válido. Si la corporación o los encargados de los libros impiden la inspección, el Art. 7.10, íd., permite a quien reclame ser accionista pedir al Tribunal de Primera Instancia, foro con jurisdicción exclusiva, una orden para ello.

El artículo define accionista como aquel inscrito en el registro de acciones de la corporación, beneficiario de un fideicomiso de votos o miembro de una corporación sin acciones de capital. Al mismo tiempo, reconoce la posibilidad de que haya un accionista distinto al que está inscrito. A este tipo de accionista se le exige que, además de juramentar el propósito de su solicitud, juramente su condición de accionista, que incluya evidencia documental de su derecho de propiedad sobre las acciones que reclama como suyas y que juramente que esa evidencia es copia veraz y correcta de lo que se aparenta probar.

El Art. 7.10 de la Ley General de Corporaciones, íd., proviene de la Sec. 220 de la Ley General de Corporaciones de Delaware, 8 Del. C. § 220,[4] aunque guarda ciertas

---

[4] La Sec. 220 de la Ley General de Corporaciones de Delaware indica, en lo pertinente al caso ante nos:

"(a) As used in this section:
    (1) "Stockholder" means a holder of record of stock in a stock corporation, or a person who is the beneficial owner of shares of such stock held either in a voting trust or by a nominee on behalf of such person…
    (3) "Under oath" includes statements the declarant affirms to be true under penalty of perjury under the laws of the United States or any state.
(b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for

business to inspect for any proper purpose, and to make copies and extracts from:

    (1) The corporation's stock ledger, a list of its stockholders, and its other books and records; and

In every instance where the stockholder is other than a record holder of stock in a stock corporation, or a member of a nonstock corporation, the demand under oath shall state the person's status as a stockholder, be accompanied by documentary evidence of beneficial ownership of the stock, and state that such documentary evidence is a true and correct copy of what it purports to be. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing which authorizes the attorney or other agent to so act on behalf of the stockholder. The demand under oath shall be directed to the corporation at its registered office in this State or at its principal place of business.

(c) If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection. The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. The Court may summarily order the corporation to permit the stockholder to inspect the corporation's stock ledger, an existing list of stockholders, and its other books and records, and to make copies or extracts therefrom; or the Court may order the corporation to furnish to the stockholder a list of its stockholders as of a specific date on condition that the stockholder first pay to the corporation the reasonable cost of obtaining and furnishing such list and on such other conditions as the Court deems appropriate. Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish that:

    (1) Such stockholder is a stockholder;

    (2) Such stockholder has complied with this section respecting the form and manner of making demand for inspection of such documents; and

    (3) The inspection such stockholder seeks is for a proper purpose.

Where the stockholder seeks to inspect the corporation's stock ledger or list of stockholders and establishes that such stockholder is a stockholder and has complied with this section respecting the form and manner of making demand for inspection of such documents, the

diferencias, sutiles en apariencia, que resultan importantes para la disposición de este caso. Es pertinente analizar la evolución que ha tenido en esa jurisdicción el derecho de un accionista a inspeccionar los libros para tener una mejor comprensión de su pertinencia a la controversia ante nos.

El derecho de un accionista a inspeccionar los libros corporativos tiene su origen en el "common law". Central Laborers Pension Fund v. News Corp., 45 A. 3d 139, 143 (Del. 2012); Shaw v. Agri-Mark, Inc., 663 A. 2d 464, 466 (Del. 1995); Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc., 535 A. 2d 1357, 1359 (Del. 1987). Se ejecutaba por medio del recurso de mandamus, cuya otorgación dependía de la discreción del tribunal una vez se demostrara que se tenía derecho al remedio solicitado. Shaw v. Agri-Mark, Inc., supra, pág. 466.

La Ley General de Corporaciones de Delaware de 1899 codificó el derecho de un accionista a inspeccionar los libros de la corporación en su Sec. 17. Esa sección versaba sobre el **derecho al voto**, que se limitaba a los **accionistas inscritos en el registro**. Ese registro era la única evidencia de la titularidad sobre las acciones. Si era

---

burden of proof shall be upon the corporation to establish that the inspection such stockholder seeks is for an improper purpose. The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the Court may deem just and proper. The Court may order books, documents and records, pertinent extracts therefrom, or duly authenticated copies thereof, to be brought within

inexistente se recurría entonces al libro de transferencias. Como remedio ante los oficiales corporativos que impidieran la inspección de los libros, solo se disponía su inhabilidad para ser escogidos en la elección para la que se solicitaba la inspección.[5] 21 Del. Laws 1899, ch. 273, § 17. Para obligar a la corporación a mostrar los libros, se recurría al recurso de mandamus. Shaw v. Agri-Mark, Inc., supra, págs. 466-467; State ex rel. Thiele v. Cities Service Co., 115 A. 773, 775 (Del.1922).

---

this State and kept in this State upon such terms and conditions as the order may prescribe…".

[5] Section 17. After the first election of directors no stock shall be voted on at any election which shall have been transferred on the books of the company within twenty days next preceding such election, and it shall be the duty of the officer who shall have charge of the transfer books to prepare and make, at least ten days before every election, a complete list of stockholders entitled to vote, arranged in alphabetical order. Such list shall be open at the principal office or place of business for said ten days, to the examination of any stockholder and shall be produced and kept at the time and place of election during the whole time thereof, and subject to the inspection of any stockholder who may be present. Upon the neglect or refusal of the said directors to produce such list at any election they shall be ineligible to any office at such election. The stock ledger, or if there be none, then the transfer books of the company shall be the only evidence as to who are the stockholders entitled to examine such list or the books of the company or to vote, in person or by proxy, at any election. The original or duplicate books of any corporation organized under this Act, in which the transfers of stock shall be registered, and the original or duplicate books containing the names and addresses of the stockholders, and the number of shares held by them, respectively, shall, at all times, during the usual hours for business, be open to the examination of every stockholder at its principal office or place of business in the State, and said original or duplicate books shall be evidence in all courts of this State.

Como parte de las enmiendas que se hicieron a la Ley General de Corporaciones de Delaware en 1967, se proveyó de un mecanismo dentro del estatuto para acudir por una orden específica ante la Corte de Cancillería (foro con jurisdicción primaria en casos corporativos en ese estado), que permitió prescindir del recurso extraordinario de mandamus ante el tribunal.[6] 56 Del. Laws 1967, Ch. 50, §220.

_____

[6] La redacción de la Sec. 220, tras las enmiendas de 1967, era la siguiente:
"§220. Stockholder's right of inspection
(a) As used in this section, "stockholder" means a stockholder of record.
(b) Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing which authorizes the attorney or other agent to so act on behalf of the stockholder. The demand under oath shall be directed to the corporation at its registered office in this State or at its principal place of business.
(c) If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder' pursuant to sub-section (b) or does not reply to the demand within five business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection. The Court of Chancery is hereby vested with exclusive jurisdiction to determine whether or not the person seeking inspection is entitled to the inspection sought. The court may summarily order the corporation to permit the stockholder to inspect the corporation's stock ledger, an existing list of stockholders, and its other books and records, and to make copies or extracts therefrom; or the Court may order the corporation to furnish to the stockholder a list of its stockholders as of a specific date on condition that the stockholder first pay to the corporation the reasonable cost of obtaining and furnishing such list and on such

Ese mecanismo se codificó bajo la Sec. 220 de la Ley General de Corporaciones de Delaware, que todavía hoy día es la que codifica el derecho de un accionista a inspeccionar los libros en ese estado. 8 Del. C. §220. Con la creación de esa sección, se separó el derecho de inspección de libros corporativos del artículo que versa sobre el derecho al voto de los accionistas. Este último se codificó bajo la sección predecesora, la Sec. 219. 8 Del. C. §219. Es decir, la Sec. 219 se mantuvo para el derecho de inspección de libros corporativos para propósitos de las asambleas de accionistas y se creó un derecho que permite la inspección para otros propósitos válidos.

Desde su aprobación inicial en 1967, la Sec. 220 ha sufrido varios cambios. Por ejemplo, en 1983 se enmendó para extender el derecho de inspección a los directores de la corporación, siempre que su propósito esté relacionado a

---

other conditions as the Court deems appropriate. Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, he shall first establish (1) that he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such documents; and (2) that the inspection he seeks is for a proper purpose. Where the stockholder seeks to inspect the corporation's stock ledger or list of stockholders and he has complied with the provisions of this section respecting the form and manner of making demand for inspection of such documents, the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose. The court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or further relief as the court may deem just and proper. The court may order books, documents and records, pertinent extracts therefrom, or duly authenticated copies thereof, to be brought within this State and kept in this State upon such terms and conditions as the order may prescribe".

sus funciones. 63 Del. Laws 1982, Ch. 25 §9. En 1995 se incluyó a los miembros de las corporaciones sin fines de lucro. Del. Laws 1995, Ch. 79 §11.

Las enmiendas más pertinentes al caso ante nos ocurrieron en 2003, cuando se reformularon las subsecciones (a), (b), (c) y (d) de la Sec. 220. 74 Del. Laws 2003, Ch. 84 §§ 5-8. En este grupo de enmiendas que se introdujo a esa sección, se viabilizó por primera vez la posibilidad de presentar evidencia extrínseca junto con la petición juramentada, para probar que quien solicita la inspección de los libros es accionista. Esta posibilidad se limita a quienes sean accionistas a través de un fideicomiso de votos.

En la sinopsis que acompañó las enmiendas claramente se señaló que uno de sus propósitos fue extender el derecho de inspección de los libros corporativos a los beneficiarios de los fideicomisos de votos. La subsección (a) se enmendó para incluir a los beneficiarios de fideicomisos de votos dentro de la definición de accionista, y la subsección (b) para permitir la presentación de prueba extrínseca que evidencie la titularidad sobre las acciones de un fideicomiso de votos.

De esta forma, se insertó en la subsección (b) la siguiente oración:

> In every instance where the stockholder is other than a record holder of stock in a stock corporation or a member of a nonstock corporation, the demand under oath shall state the person's status as a stockholder, be accompanied by documentary evidence of **beneficial ownership** of

the stock, and state that such documentary evidence is a true and correct copy of what it purports to be. (Énfasis suplido).

74 Del. Laws 2003, Ch. 84 §6.

Aunque no fue hasta el 2003 que la Ley General de Corporaciones de Delaware permitió la presentación de evidencia extrínseca para probar la titularidad sobre ciertas acciones en medio del proceso extraordinario de la Sec. 220, supra, los tribunales lo hacían desde mucho antes bajo ciertas circunstancias.

En Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc., supra, el Tribunal Supremo de Delaware permitió la presentación de evidencia extrínseca para demostrar la calidad de accionista de un solicitante bajo la Sec. 220. En ese caso se especificó que solo se permitiría evidencia extrínseca cuando el registro de accionistas de una corporación estuviera en **blanco o fuera inexistente**. Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc., supra, pág. 1361. Véase, además, Shaw v. Agri-Mark, Inc., 663 A. 2d 464 (Del. 1995). En particular, sostuvo:

> The right to examine the corporation's stock ledger is hollow, indeed, if it can be defeated by never maintaining such a record. If common law right of stockholder to examine a corporation's books can only be diminished by legislation, a *fortiori*, the statutorily guaranteed right to examine the stock ledger cannot be frustrated by nonfeasance. We find it implicit in Sections 219 and 220 that Delaware corporations have an affirmative duty to maintain a stock ledger.
>
> Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc., supra, pág. 1359.

El Tribunal Supremo de Delaware llegó a esa conclusión tras reconocer que de las secciones 219 y 220 se desprende **un deber de la corporación de mantener un libro de accionistas.** De esta forma, **el incumplimiento de ese deber por parte de una corporación no podía perjudicar el derecho de un accionista a inspeccionar los libros.** Íd. Véase, además, Shaw v. Agri-Mark, Inc., supra.

En Viele v. Devaney, 679 A. 2d 993 (Del. Ch. Ct. 1996), la Corte de Cancillería permitió la presentación de evidencia extrínseca para refutar el contenido del registro de accionistas en un procedimiento bajo la Sección 219, que versa sobre la inspección del registro de accionistas para propósitos de las votaciones en que estos participan. Se llegó a esa conclusión a pesar de que para el año en que se resolvió ese caso, antes de las enmiendas del 2003, la subsección (c) especificaba que el registro de accionistas sería "la única evidencia" admisible para determinar quién era accionista para propósitos de votación e inspección de libros. 56 Del. Laws 1967, Ch. 50, §219. Para concluir contrario al mandato expreso de la Sección 219(c), la Corte de Cancillería tomó en consideración que el registro de accionistas, que contenía unas anotaciones hechas a mano y eran el objeto de la controversia, siempre estuvo bajo el control exclusivo de una sola de las partes. La evidencia extrínseca que se permitió eran unas cartas que socavaban la credibilidad de las anotaciones hechas a mano en el registro. Viele v. Devaney, supra, págs. 996-997.

La redacción de la Sección 220(b) que se introdujo a Delaware en 2003 es la que, en esencia, prevalece hoy día[7] en ese estado, y es de la que se deriva el Art. 7.10 de la Ley General de Corporaciones de 2009, <u>supra</u>. Sin embargo, se pueden ver ciertas diferencias. La de mayor pertinencia al caso ante nos está relacionada con la traducción que se hizo de la subsección (b) en el estatuto puertorriqueño, particularmente la oración citada en el párrafo anterior. En nuestra Ley General de Corporaciones de 2009 esa oración en la subsección (b) lee de la siguiente forma:

> En cada caso en que el accionista sea distinto al accionista inscrito en una corporación autorizada a emitir acciones o del miembro de corporaciones sin acciones de capital, el requerimiento jurado deberá declarar su condición de accionista, acompañarse de evidencia documental de su derecho de propiedad sobre la acción, y declarar que la evidencia documental es copia veraz y correcta de lo que se aparenta probar.

14 L.P.R.A. sec. 3650.

Se puede observar que la traducción del estatuto puertorriqueño eliminó de esa oración la mención específica de la titularidad beneficiaria o "beneficial ownership" que la ley de Delaware hace en referencia a los titulares de acciones a través de fideicomisos, que fue el propósito de la enmienda a la subsección (b) de 2003. De esta forma, **nuestra versión del estatuto que permite la presentación de prueba extrínseca para probar titularidad sobre una acción es más general.** Esa oración era inexistente en la Ley

---

[7] En el 2010 se hizo una nueva enmienda a la subsección (b), pero solo añadió una coma.

General de Corporaciones de 1995, Art. 7.10, Ley Núm. 144-1995. 14 L.P.R.A. sec. 2910.

Además de exigir que quien solicite la inspección sea un accionista, tanto la Sec. 220 de la Ley de Corporaciones de Delaware como el Art. 7.10 de nuestra Ley General de Corporaciones, supra, requieren que el propósito para la inspección sea válido. El propósito válido se define como aquel que esté razonablemente relacionado a los intereses del solicitante como accionista. Art. 7.10 (b), Ley Núm. 164-2009, supra.

Ahora bien, el derecho de inspección no es absoluto porque el propósito válido no puede ser adverso a los intereses de la corporación. Compaq Computer Corp. v. Horton, 631 A.2d 1, 4 (Del. 1993). Sin embargo, el Tribunal Supremo de Delaware ha reiterado que una vez el solicitante acredita que es accionista, y que tiene un propósito principal válido para la inspección, cualquier otro propósito secundario es irrelevante. Northwest Industries, Inc. v. B.F. Goodrich Co., 260 A.2d 428, 429 (Del. 1969). General Time Corp. v. Talley Industries, Inc., 43 Del. Ch. 531, 533 (Del. Ch. Ct. 1968).

El interés en determinar el valor de las acciones de una corporación es un propósito válido, particularmente en las corporaciones de individuos, cuyas acciones no están sujetas a venta pública. CM & M Group, Inc. v. Carroll, 453 A. 2d 788, 792-793 (Del. 1982). De igual forma, se ha reconocido como un propósito legítimo para propósitos de

inspeccionar los libros el interés en saber si una corporación tiene la capacidad de pagar dividendos. Helmsman´s Management Services, Inc. v. A & S Consultants, Inc., 525 A. 2d 160, 165 (Del. 1987).

IV

La disyuntiva con la que nos enfrenta este caso estriba en la necesidad de hacer un balance entre el derecho de inspección de los libros corporativos por parte de un accionista y lo expedito que debe ser ese proceso bajo el Art. 7.10 de la Ley General de Corporaciones, supra.

Por un lado, el derecho de inspección de los libros corporativos que recogen la Sec. 220 de la Ley General de Corporaciones de Delaware, supra, y el Art. 7.10 de nuestra ley pretende viabilizarse mediante un procedimiento expedito. La autorización para presentar evidencia extrínseca pudiera abrir la puerta a un descubrimiento de prueba que tronche lo sumario que aspira a ser el proceso.

Por otro lado, impedir la presentación de prueba extrínseca para refutar el registro de accionistas, en el fondo, deja la ejecución del derecho de inspección en manos de quien lo impide. Debemos recordar que, particularmente en casos de corporaciones de pocos accionistas, el registro lo confecciona y mantiene bajo su control exclusivo algún oficial o director, como sucede en este caso.

Ante la disyuntiva planteada debemos recordar que el Art. 7.10 de nuestra Ley General de Corporaciones, en el

subinciso (a), ofrece las definiciones aplicables a esa sección e indica que son accionistas aquellos inscritos en el registro, los beneficiarios de fideicomiso de votos en que estén depositadas las acciones o los miembros de corporaciones sin acciones de capital. Al mismo tiempo, el subinciso (b) reconoce la posibilidad de que haya un accionista distinto al inscrito. Para estos casos nuestra ley permite la presentación de prueba documental que acredite el derecho de propiedad sobre la acción que se reclame, juramentada como una copia veraz y correcta de lo que aparenta probar. Como vimos, la traducción de este subinciso dista del texto original de la Sec. 220 de la Ley de Corporaciones de Delaware, que circunscribe la posibilidad de presentación de prueba extrínseca a los casos en que se poseen acciones a través de un fideicomiso de votos.

Esto nos lleva a concluir que, en casos como el presente, se tiene que admitir la presentación de prueba extrínseca que acredite la calidad de accionista de quien solicita la inspección. En este caso, el licenciado Domenech Fernández presentó abundante prueba de su derecho sobre el 30% de las acciones de Integrate Coporate Services, P.S.C. La prueba extrínseca presentada consiste, principalmente, en documentos que generó la corporación, su presidente y administrador, en el curso de sus negocios.

Desde la oferta inicial de empleo se ofreció al licenciado Domenech Fernández la titularidad sobre el 30%

de las acciones. Una lectura de la oferta demuestra que no se condicionó la entrega de la titularidad sobre esas acciones a nada más que su aceptación. No se mencionó la necesidad de pagos o gestiones adicionales a la aceptación misma de la oferta, lo que ocurrió.

Somos conscientes de que, al momento de hacerse la oferta, la Ley General de Corporaciones vigente era la de 1995. Ley Núm. 144-1995, 4 L.P.R.A. sec. 2601 y ss. Esta, en su Art. 5.02, 14 L.P.R.A. 2762, señalaba que el pago por las acciones se haría en efectivo, servicios prestados, bienes muebles, bienes inmuebles, alquiler de bienes inmuebles o una combinación de las anteriores.[8]

El licenciado Domenech Fernández señala que, en todo caso, pagó por el valor de sus acciones con sus contactos, reputación y los servicios que prestó a la corporación. Es decir, el peticionario nos invita a considerar que la plusvalía añadida a la corporación constituye el equivalente a "servicios prestados". Sin embargo, en este momento no tenemos que entrar en esa adjudicación de valoración pues el caso ante nos se circunscribe al derecho de inspección, ante la prueba extrínseca de este caso. Para eso, basta con la determinación de si quien reclama ser accionista realmente lo es y si tiene un propósito válido. Después de todo, si quedara alguna porción de las acciones

---

[8] El Art. 5.02 de la Ley General de Corporaciones de 2009, 14 L.P.R.A. sec. 3582, flexibilizó aun mas las formas de pago por las acciones para permitir cualquier propiedad tangible o intangible, o cualquier otro beneficio para la corporación.

pendiente de pago, la Ley General de Corporaciones de 1995 permitía, al igual que la vigente, el pago parcial por las acciones. Art. 5.07 de la Ley Núm. 144-1995, 14 L.P.R.A. sec. 2767, y Art. 5.07 de la Ley Núm. 164-2009, 14 L.P.R.A. sec. 3587.

Luego de aceptada la oferta de empleo que se extendió al licenciado Domenech Fernández, el presidente de la corporación y su administrador le trataron consistentemente como un accionista. Lo representaron así ante los clientes existentes y potenciales de la corporación en correos electrónicos, perfiles y tarjetas de presentación.

Por si fuera poco, las compensaciones se distribuyeron en una proporción de 70-30% entre los licenciados Soto Miranda y Domenech Fernández. Esto incluyó el llamado "bono de ganancias". El Tribunal de Primera Instancia concluyó que ese bono correspondió al pago de dividendos al que hace referencia el Art. 5.18 de la Ley General de Corporaciones de 2009, 14 L.P.R.A sec. 3598. Llegó a esa conclusión luego de analizar la explicación del contable de la corporación, David Rodríguez, y compararla con lo que indica la Ley General de Corporaciones sobre la distribución de dividendos. Según la ley, el pago de dividendos se puede hacer con cargo a los sobrantes de la corporación o las ganancias netas del año fiscal en que se declaren, o el año precedente. Art. 5.18 de la Ley Núm. 164-2009, 14 L.P.R.A. sec. 3598. No vemos razón para intervenir con esa interpretación.

Así las cosas, la corporación ofreció la entrega del 30% de las acciones al licenciado Domenech Fernández, se le presentó de esa forma ante sus clientes existentes y potenciales clientes, y en la relación interna se le trató como tal. No pueden su presidente y su administrador ir en contra de sus actos propios.

Ya hemos aplicado la doctrina de los actos propios al contexto corporativo. Véase Santiago v. Rodríguez, 181 D.P.R. 204, 217 (2011). La raíz de la doctrina de actos propios se encuentra en el principio general de derecho que exige proceder de buena fe. A nadie le es lícito obrar contra sus actos. Tampoco puede asumir una conducta contradictoria a una actuación previa que generó expectativas en quien confió en ese obrar. Santiago v. Rodríguez, supra, pág. 217; Int. General Electric v. Concrete Builders, 104 D.P.R. 871, 876 (1976).

En Santiago v. Rodríguez, supra, aplicamos la doctrina de actos propios a una corporación que se negó a honrar una suscripción de acciones que incumplió con las formalidades de ley, pero trató como accionista a quien reclamaba ser acreedor de las acciones. No vemos razón para desviarnos de esa determinación en ese caso.

Integration Corporate Services, P.S.C., es una corporación profesional. Estas sólo pueden organizarse para practicar una profesión cuyo ejercicio exija una licencia como requisito de ley. Sus accionistas solo pueden ser personas licenciadas para practicar la profesión

determinada. Arts. 18.01 y 18.02 de la Ley General de Corporaciones de 2009, 14 L.P.R.A. secs. 3921 y 3922. Véase, además, Santiago v. Rodríguez, supra, págs. 218-219.

Por otro lado, el reducido número de accionistas de Integration Corporate Services, P.S.C. dio margen a que en sus operaciones diarias se comportara como una corporación íntima. Incluso, en el Certificado de Incorporación de Integration Corporate Services, P.S.C., párrafo sexto, se expresó la intención de limitar el máximo de accionistas a 35, tal como limitaba el Art. 14.03 de la Ley General de Corporaciones de 1995 para las corporaciones íntimas.[9] En ese mismo documento se expresó el interés en formar una corporación íntima. A este tipo de corporación se le ha reconocido la necesidad de una flexibilidad e informalidad en sus operaciones, de manera que sus inversionistas puedan ser, al mismo tiempo, los administradores de la empresa, hasta el punto de calificárseles como sociedades incorporadas. C.E. Díaz Olivo, Corporaciones, San Juan, Publicaciones Puertorriqueñas, 2005, págs. 322-323.

Sin ser una corporación íntima, Integrate Corporate Services, P.S.C. se comportó como tal. Ello explica la ausencia de formalidades para hacer constar cómo se dio la transferencia de acciones al licenciado Domenech Fernández. También explica la posterior presentación en evidencia de minutas, registros y demás documentos corporativos inconsistentes con las actuaciones de la empresa en el

curso de sus negocios, evidenciadas por abundante prueba no refutada. Además, explica por qué el Tribunal de Primera Instancia no dio credibilidad a las minutas, registros y libros corporativos. No vemos razón para intervenir con esa determinación del Tribunal de Primera Instancia, pues esos documentos tampoco nos merecen credibilidad.

La evidencia extrínseca presentada, no controvertida, prueba que el licenciado Domenech Fernández debió figurar en el registro de accionistas de la corporación y tener derecho a la inspección del Art. 7.10 de la Ley General de Corporaciones, supra, pero las omisiones del presidente de la corporación y del administrador lo excluyeron. Estos últimos faltaron al deber de mantener los libros y registros de la corporación al día, acorde con Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc., supra. Su actuación no puede beneficiarles ahora, en detrimento del derecho que reconoce la ley.

El licenciado Soto Miranda señaló que su intención inicial era hacer al licenciado Domenech Fernández accionista, pero luego se arrepintió. Esa posición obvia el hecho de que, una vez una parte hace una oferta con la intención de celebrar un contrato, este queda cerrado con la sola aceptación de la otra parte. González v. Alicea, Dir. Soc. Asist. Legal, 132 D.P.R. 638, 653 (1993). Así, una vez el licenciado Domenech Fernández aceptó la oferta que se hizo en la carta, se cerró el contrato y el

---

[9] La Ley General de Corporaciones de 2009 elevó ese número a

licenciado Soto Miranda no podía retirarla unilateralmente, sin que ello tuviera consecuencias.

Este análisis nos lleva a concluir que sería una injusticia impedir en este caso la presentación de evidencia extrínseca para probar el derecho sobre las acciones con miras a solicitar la inspección de los libros corporativos al amparo del Art. 7.10, supra. Ello dejaría la vigencia del derecho a la inspección de los libros a la merced de quien los elabora, custodia e impide la inspección.

Sin embargo, la inspección de los libros en este caso debe limitarse a aquella información necesaria para el cálculo de las bonificaciones que interesa el licenciado Domenech Fernández. Ese interés constituye un propósito válido, como requiere el Art. 7.10 de la Ley General de Corporaciones, supra. Consideramos prudente la limitación que dispuso el Tribunal de Primera Instancia, que excluyó de la orden aquella información sobre los contactos de las corporaciones pues ello es innecesario para el propósito válido señalado. De esta forma, resguardamos la preocupación del licenciado Soto Miranda de que se utilice la información para usurpar clientes de Integration Corporate Services, P.S.C.

V

Por los motivos antes expuestos, concluimos que el Lcdo. Francisco Domenech Fernández es accionista de

_____

75. Art. 1403, 14 L.P.R.A. sec. 3823.

Integration Corporate Services, P.S.C., con un propósito válido para inspeccionar los libros corporativos y récords financieros solicitados, al amparo del Art. 7.10 de la Ley General de Corporaciones, supra. Ordenamos al Lcdo. Ricardo E. Soto Miranda y al Sr. Guillermo Zúñiga López que permitan la inspección. De esta forma, revocamos la determinación del Tribunal de Apelaciones y restituimos la sentencia del Tribunal de Primera Instancia en todos sus extremos.

Se dictará Sentencia de conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Francisco J. Domenech Fernández<br><br>    Peticionario<br><br>      v.<br><br>Integration Corporate Services, PSC; Ricardo E. Soto Miranda, en su capacidad oficial como único director y único oficial de Integration Corporate Services, PSC; y Guillermo J. Zúñiga López, en su capacidad oficial como Administrador de Integration Corporate Services, PSC<br><br>    Recurridos | CC-2011-875 |

SENTENCIA

En San Juan, Puerto Rico, a 3 de enero de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, concluimos que el Lcdo. Francisco Domenech Fernández es accionista de Integration Corporate Services, P.S.C., con un propósito válido para inspeccionar los libros corporativos y récords financieros solicitados, al amparo del Art. 7.10 de la Ley General de Corporaciones, supra. Ordenamos al Lcdo. Ricardo E. Soto Miranda y al Sr. Guillermo Zúñiga López que permitan la inspección. De esta forma, se revoca la determinación del Tribunal de Apelaciones y restituimos la sentencia del Tribunal de Primera Instancia en todos sus extremos.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo